Ernest Cerda GONZALES, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00086–CR.

Court of Appeals of Texas, San Antonio.

Dec. 30, 1981.

Rehearing Denied Jan. 15, 1982.

Discretionary Review Refused April 7, 1982.

Harry A. Nass, Jr., San Antonio, for appellant.

Bill M. White, Dist. Atty., Michael A. Kuehr, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

The appellant was indicted for the offense of murder. He was found guilty by a jury and punishment was assessed by the trial court at confinement in the Texas Department of Corrections for a term of twenty-five (25) years.

Appellant, in three separate grounds of error, complains that he was denied effective assistance of counsel. His specific complaints are (1) that trial counsel advised appellant to testify concerning a prior "conviction" which in fact was inadmissible because of articles 38.29 and 42.12 § 3d(c), Tex.Code Crim.Pro.Ann., (2) that trial counsel made no effort to locate and timely seek subpoenas for critical witnesses, and (3) that trial counsel did not file a motion for continuance in order to gain time to locate and produce critical witnesses.

The indictment alleged that appellant killed Rudy Muniz by shooting him with a gun. In support of this allegation the State produced thirteen witnesses.

The evidence adduced by the State reveals that appellant arrived at the Culebra Lounge, located in San Antonio, in the early afternoon on Sunday, March 19, 1978, in the company of five or six others. Appellant had been drinking beer throughout the day. Around 10:30 p. m. an argument ensued over the use of the public phone in the bar when appellant refused to give the phone to another patron of the bar. The owner of the bar, Rudy Muniz, went over to appellant and his group and asked them to leave the bar.

Appellant, wearing a purple shirt with a zodiac sign on the front, left the bar around 11:00 p. m. At approximately 11:45 p. m., appellant was seen outside the bar driving a blue, late-model Monte Carlo with a white top. Three witnesses testified to seeing appellant in the parking lot. One could merely identify appellant by his clothing, while two others actually saw his face and recognized him as the person who had been in the bar that day and had argued over the use of the phone.

Oscar Rodriguez, another patron of the bar, and Rudy Muniz went immediately out to the parking lot and approached the car. Rodriguez testified that Muniz asked appellant to leave because he was drunk and "the law might put you in jail." Rodriguez, upon seeing appellant reach for a gun on the bucket seat, shouted at Muniz and began to run. Muniz was shot once. Rodriguez heard four more shots being fired. Three of the shots hit a wall and one hit a car and richocheted, hitting Rodriguez in his right forearm.

Various other patrons of the bar testified about hearing shots but none could identify appellant. Six police officers testified concerning their investigation of the case.

Appellant's sole defense was alibi. The defense called three witnesses, including the appellant. Appellant and his wife testified that at the time of the shooting, appellant was at home in bed. Appellant, while admitting to having been at the bar earlier in the day, denied having an argument in the bar concerning the phone.

Rosa Valenzuela testified that appellant and her son, Johnny, had gone to the lounge to play pool and that they left the bar and went back to her house. She testified that appellant stayed only a short while and left. On cross-examination, she admitted that she did not know where appellant was at the time the shooting occurred.

At the hearing on appellant's objections to the record, counsel on appeal attempted to develop evidence concerning ineffective assistance of trial counsel. Seven witnesses were called to testify.

Johnny Valenzuela and Zacharias Sauceda, also known as Choka, testified that they had been with appellant on the day that the shooting took place. They both denied that appellant was involved in any argument at the Culebra Lounge, but they could not testify as to appellant's whereabouts at the time the shooting took place.

Appellant and his wife both testified at this hearing. They stated that they had hired their attorney, Richard Pena, approximately two months before the trial and had paid him $500.00. At the initial meeting they discussed the witnesses they wanted subpoenaed and gave Pena the names of Johnny Valenzuela, Rosa Valenzuela, David Guzman, and Choka, whose full name or address they did not know.

On the day jury selection began, appellant allegedly asked his attorney if the subpoenas had been issued and Pena said no, but that he would see that they were sent out that day. As far as appellant knew, the subpoenas were requested after jury selection began. Mrs. Gonzales testified that Pena had called appellant the night before trial commenced and had advised appellant to pick up the witnesses on the way to court.

Mrs. Gonzales testified that immediately before trial began, Pena asked appellant about his prior criminal record. Appellant testified that Pena told him that he was going to put him on the stand and ask him about his past and that he should answer these questions. Appellant insisted that he was never told that his prior conviction, from which he successfully completed his

probationary term, would not have been admissible at the guilt-innocence phase of trial.

The clerk of the 175th District Court, Timothy Palmquist, testified that a request for only one subpoena had been filed by Pena, directing that Rosa and John Valenzuela appear to testify at trial. The subpoena was returned unserved because the subpoena servers were unable to locate these witnesses. Rosa Valenzuela, however, did appear at trial and did testify. No motion for continuance was filed by Pena.

Richard Halter, a prosecutor for the Grievance Committee of the State Bar Association, was called to testify that he had prosecuted a case against Pena which had resulted in Pena's law license being suspended for five years beginning April 16, 1979. The petition alleged twelve separate complaints with three more complaints coming in after the judgment was entered. Halter stated that the complaints were for failure to represent clients.

According to Halter, Pena had voluntarily surrendered his license in 1964 but was reinstated in 1974. Thus he was a duly licensed attorney at the time he was hired by appellant and at the time of trial.

Because all three of appellant's grounds of error address ineffective assistance of counsel, it is necessary at the outset to state the general standards applicable in testing adequacy of representation. As a consequence of *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), performance of trial counsel is to be tested by the same standard, whether counsel is retained or appointed. Our Court of Criminal Appeals, in the recent case of *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), has stated the standard to be that of "reasonably effective assistance of counsel."

The Court of Criminal Appeals stated in *Johnson v. State*, 614 S.W.2d 148, 149 (Tex. Cr.App.1981):

Of necessity, each case must turn on its own particular facts and circumstances,

[Citations omitted.] The adequacy of an attorney's services must be gauged by the totality of the representation. [Citations omitted.] The allegations of ineffective assistance of counsel will be sustained only if they are firmly founded. [Citations omitted]

The Constitution demands only reasonably effective counsel, not counsel that is error-free, *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981); *Mercado v. State*, 615 S.W.2d 225 (Tex.Cr.App.1981), or whose competency or adequacy of representation is to be judged by hindsight. *Mercado v. State, supra.*

It is fundamental, however, that an attorney must acquaint himself with the law and the facts of the case before he can render reasonably effective assistance of counsel. *Flores v. State*, 576 S.W.2d 632 (Tex.Cr.App.1978). The size of the burden on counsel to acquaint himself with the facts will vary, of course, depending upon the complexities of the case, the plea to be entered by the accused, the punishment that may be assessed, and other such factors. *Flores v. State, supra.*

The burden is on the attacking party to demonstrate ineffective assistance of counsel, and the appellate court will not attempt to ascertain the specific reason why counsel conducted the defense in the manner chosen. *Simmons v. State*, 594 S.W.2d 760 (Tex.Cr.App.1980). *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App.1977). Full inquiry should be made only if after the trial from all appearances there still is no plausible basis in strategy or tactics for his actions. *Ex parte Ewing*, 570 S.W.2d 941 (Tex.Cr.App.1978).

In appellant's first ground of error, he complains that he was denied effective assistance of counsel in that trial counsel advised him to testify concerning a prior conviction which was inadmissible because of articles 38.29 [1] and 42.12 § 3d(c),[2] Tex.Code Crim.Pro.Ann. (Vernon 1979).

---

1. Art. 38.29 provides:

   The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been

charged by indictment, information or complaint, with the commission of an offense

Immediately before passing the witness at the end of direct examination, appellant's attorney asked the following:

Q: Mr. Gonzales, have you ever been convicted of a felony?

A: Yes, sir.

Q: When was this, sir?

A: Ten years ago.

Q: Was this a case that you had a lawyer, or where you fought the case or plead guilty?

A: What do you mean, rephrase yourself?

Q: Did you plead guilty to the offense?

A: Yes, sir.

On cross-examination, the State revealed that appellant's prior conviction was for the offense of assault with intent to commit murder with malice, and that he had been placed on three years' probation. The indictment for this earlier charge was shown to appellant while he was on the stand. Reference was also made to this prior conviction during the State's closing argument. The State argued, "The purpose of the introduction of that offense, was to aid you in passing on the credibility of the defendant, if it does." "If the defendant would commit that offense of aggravated assault to commit murder with malice, would he not also lie about this charge to murder?"

The defense attorney, in closing argument, also made reference to the prior conviction. He stated:

Now, who is going to make a big to do about his prior conviction. And I say let him say, that I am not telling the truth. When I tell you, ladies and gentlemen of the jury, had I not put him on the stand, there is no way that the State could prove it. Mr. Barrera said, we could have gotten it anyway. They could not. I put him on the stand. I asked him, have you been convicted before, and he said, yes. He didn't deny it. Had I not elected to put him on the stand the Court would have another instruction for you to read, that you couldn't take into consideration, in deciding guilt or innocence.

\* \* \* \* \* \*

Credibility. There is always credibility, because they wish to destroy this man's credibility. The fact, that at one time, he was charged with an offense. He said, he was guilty to the offense, and for that reason, he plead guilty. I'm just as sure, that he's not guilty of this offense, because he plead, not guilty, you heard the testimony.

In the court's charge to the jury, an instruction was given limiting their consideration of the prior conviction to the credibility of the defendant as a witness in his own behalf and the weight to be given to his testimony.

Appellant argues that his counsel failed to investigate the law and correctly counsel him concerning admissibility of a conviction where a probationary term has been successfully completed.

against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness.

2. Art. 42.12 § 3d(c) provides: \* \* \*

On expiration of a probationary period imposed under Subsection (a) of this section, if the court has not proceeded to adjudication of guilt, the court shall dismiss the proceedings against the defendant and discharge him. The court may dismiss the proceedings and discharge the defendant prior to the expiration of the term of probation if in its opinion the best interest of society and the defendant will be served. A dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense, except that upon conviction of a subsequent offense, the fact that the defendant has previously received probation shall be admissible before the court or jury to be considered on the issue of penalty.

We have scrutinized this case painstakingly and must conclude that there was no benefit afforded the appellant by the introduction of his prior conviction, nor do we agree with trial counsel that the conviction became admissible because appellant elected to testify. We cannot say that this was a strategic ploy on the part of defense counsel. We must next determine whether this was such error as would require a reversal of the case or whether it was harmless.

■ The test for harmless error is not whether a conviction could have been had without the improperly admitted evidence but "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Jordan v. State*, 576 S.W.2d 825 (Tex.Cr.App.1978). *See also Bass v. State*, 622 S.W.2d 101 (Tex.Cr.App. 1981) (extraneous offense of appellant firing a weapon at another's home was erroneously admitted; however, it was held not to be reversible error); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980) (the error in admitting evidence of the out-of-court experiment was harmless). The question of whether or not an error is harmless cannot be answered by considering the error in isolation.[3] *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). It is necessary to review the facts of the case and the evidence adduced at trial to determine the effect of the inadmissible evidence upon the other evidence adduced at trial and upon the conduct of the defense. *Fahy v. Connecticut, supra*. A court must then decide whether absent the so-determined prejudicial effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Chapman v. California, supra; Fahy v. Connecticut, supra. See Crawford v. State*, 617 S.W.2d 925 (Tex.Cr. App.1980).

■ The duty of the appellate court is to determine this on the basis of its own reading of the record and "the probable impact ... on the minds of an average jury."[4] *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). *See Crawford v. State, supra*. We cannot say that in the case at bar, the State's case against appellant would have been less persuasive without the introduction of appellant's prior record. Aside from this, the independent evidence is more than sufficient to connect appellant to the murder. We are convinced, beyond a reasonable doubt, that the introduction of this prejudicial evidence did not contribute to the conviction of the appellant for the offense of murder. There was overwhelming evidence, both direct and circumstantial, connecting appellant to the crime.[5]

We cannot say that solely because defense counsel made the mistake of introducing this prior conviction, appellant was denied effective assistance of counsel. We must view the representation as a whole. *Archie v. State*, 615 S.W.2d 762 (Tex.Cr.

---

**3.** Consideration of an error in isolation is appropriate only if the error is of such a nature that the harmless error rule does not apply. *Chapman v. California, supra*, (stating that "some constitutional rights so basic that their infraction can never be treated as harmless error.")

**4.** We feel that because it was defense counsel who elicited the information from the appellant concerning his prior conviction rather than the State, such had a less prejudicial impact on the minds of the jurors.

**5.** Furthermore, an error in admitting improper testimony can generally be cured or rendered harmless by an instruction from the court. *Smith v. State*, 457 S.W.2d 58 (Tex.Cr.App. 1970). This instruction is generally given immediately after the testimony is elicited. In the case at bar there was no objection after and no request for such instruction. The court however, in its charge to the jury, did instruct the jury that they could only consider the evidence pertaining to the prior conviction in determining credibility of the appellant as a witness in his own behalf and the weight to be given to his testimony. We feel that this limiting instruction minimized the prejudice to appellant.

App.1981). The record reveals that there was vigorous representation, excellent objections made and exceptions taken to rulings of the court with proper preservation of evidence for review, ample cross-examination of those witnesses who offered incriminating testimony against appellant and adequate examination of the only witness who could substantiate appellant's defense of alibi. Appellant's first ground of error is overruled.

In appellant's second and third grounds of error, he complains that trial counsel made no effort to locate and timely secure issuance of subpoenas for critical witnesses, and did not file a motion for continuance in order to gain time to locate and produce these critical witnesses. At the time appellant hired his attorney, the two of them discussed which witnesses appellant wanted to have testify at trial, and the names of four witnesses were given to the attorney. The evidence at the hearing was conflicting as to whether there had been a discussion about what the substance of this testimony would be at trial.[6] Appellant's trial counsel issued a subpoena for Johnny Valenzuela and his mother, Rosa, on the day jury selection began. Although the subpoenas came back unserved, Mrs. Valenzuela was present at trial and did testify. Johnny Valenzuela was subpoenaed for the post-trial hearing, and testified. Appellant gave the name of an individual who went by the name of Choka, his full name and address being unknown to appellant. No subpoena was sought for this person by trial counsel. Appellate counsel did secure issuance of a subpoena for this individual for the post-trial hearing and he did testify. The fourth individual was not subpoenaed by trial

counsel, nor could he be found by counsel on appeal. There is nothing in the record to reveal what this witness' testimony would have been. Appellate counsel was able to ascertain the location of two of the three witnesses and produced them in court and their testimony is contained in the record.

Johnny Valenzuela, at the hearing to develop evidence for appeal, testified that he was with the appellant throughout the day the killing took place. He testified that appellant did not get into any arguments at the bar, but he could not elucidate as to the whereabouts of appellant at the time the shooting actually occurred. He stated that he went to bed around 11:00 p. m. The shooting occurred at approximately 11:45 p. m.

Zacharias Saucedo (Choka) testified that he too was with appellant at the bar and that there was no argument concerning the use of the phone. He testified that he left appellant at Valenzuela's house around 11:30 p. m. Thus, he could offer nothing as to appellant's whereabouts when the shooting occurred.

It is apparent that these witnesses could not have aided appellant's alibi defense. At most, they could have added controverting evidence going only to the motive for the shooting.

■ Failure to call witnesses at the guilt stage of the trial is not ineffective representation in the absence of a showing that such witnesses were available and that appellant would have benefited from the presentation of such evidence. *Hunnicutt v. State*, 531 S.W.2d 618 (Tex.Cr.App.1976). Of the uncalled witnesses named by appel-

---

6. On cross-examination of appellant, the following colloquy took place:

Q: Did you discuss with Mr. Pena what you thought the people could testify to the once [sic] that you mentioned Choka and Danny Guzman did you tell him what you thought they could say?
A: No, sir.
Q: You didn't tell him?
A: No, sir.
Q: Okay. You just told him that you wanted them as witnesses?
A: Yes, sir.

Q: But you didn't tell him why?
A: Because the guys were with me at the time.
Q: That's what I'm asking you. Did you tell Mr. Pena that?
A: Yes, sir.
Q: You told him what you thought they could testify to?
A: Well, in the first place I don't know what they could testify. I only told these guys were with me that day.
Q: Okay, But you told him that much?
A: Yes, sir.

lant who were called at the post-trial hearing, not one was present at the actual shooting and not one was with the appellant at the time the shooting occurred; therefore, none of them could have benefited the appellant in reinforcing his defense of alibi.

In *Thomas v. Estelle*, 588 F.2d 170 (5th Cir. 1979), appellant alleged that he was denied effective assistance of counsel, asserting that had his attorney had adequate time to prepare, he would have called several alibi witnesses. In support, he presented the affidavits of three people who swore that appellant was in their presence at specific times. Their testimony, however, could not have aided appellant at trial, since they could not account for his activities during the time of the alleged assault. The court thus rejected the defendant's claim of ineffective assistance of counsel.

In the instant case, Mrs. Gonzales, appellant's wife, testified that she and appellant did not even know the witness Saucedo's real name or address at the time of trial. Appellant, prior to trial, had been released on bail. He testified that he made no effort to contact any of the named individuals he wanted to have subpoenaed. In *Davis v. State*, 505 S.W.2d 800 (Tex.Cr.App. 1974), the allegation was made that there was ineffective assistance of counsel because of failure to call alibi witnesses. There was testimony that one witness could not be located because the defendant had given counsel only the person's last name. The failure to have a subpoena issued was held not to be a denial of effective assistance of counsel.

As to the failure to secure subpoenas for these witnesses and to ask for a continuance in order to gain time to locate and produce these witnesses, we hold that appellant failed to show that he would have benefited from their testimony, and further, that they were even available at time of trial. Therefore, we decline to hold that it was ineffective assistance of counsel to fail to request a continuance when the witnesses could not have aided appellant.

Again, in viewing the representation as a whole, and the particular circumstances of this case, we find that appellant was not denied the reasonably effective assistance of counsel.

The judgment is affirmed.