Joe SUNIGA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–85–00443–CR.

Court of Appeals of Texas, San Antonio.

May 29, 1987.

Sid Harle, San Antonio, for appellant.

Fred G. Rodriguez, Crim. Dist. Atty., Sam Millsap, Former Crim. Dist. Atty., Emil Holiner, Ray Hardy, Jr., San Antonio, for appellee.

Before ESQUIVEL, BUTTS and DIAL, JJ.

OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment of conviction in a murder case.

Appellant was charged by indictment with the offense of murder, which was enhanced to a "repeater" status by the allegation of one prior felony conviction. In a jury trial, appellant was found guilty of murder. Appellant plead true to the enhancement paragraph, and the jury assessed his punishment at fifty (50) years' confinement. Appellant presents us with two points of error on appeal. We affirm.

The deceased, Richard Cook, was stabbed and cut numerous times with a knife between the hours of 12:30 a.m. and 1:30 a.m. on October 12, 1984. At 10:30 a.m. on the same day, the deceased's body was discovered on the side of the road in a ditch on the Old Pleasanton Road by Raymundo Guzman, who was on his way to feed his hogs. An autopsy was performed on the deceased by the Office of the Bexar County Medical Examiner. The autopsy revealed multiple stab wounds, abrasions and incised wounds or cuts across the neck, hands, back of the upper left arm, and back. Further, there was a patterned bruise on the chest of the deceased that had the configuration of the sole of a tennis shoe. All of the wounds were consistent with wounds inflicted by a knife. The stab wounds were a cluster of six stab wounds on the left side of the chest of which one went into the root of the aorta; a stab wound to the lower left side of the chest; a stab wound to the left side of the abdomen; incised wounds or cuts across the palms and fingers of the hands; and a very large, extremely deep, incised wound or cut across the front of the neck which produced a complete transection of the trachea and the esophagus, almost severing the head from the body. The incised wound across the neck was the cause of death.

Appellant testified that on October 11, 1984, appellant pulled Richard Cook, the deceased, off of Harry Chandler outside

the parking area of the Southside Country Club. The deceased and Chandler had been fighting. Although the deceased turned on appellant for interfering, he eventually cooled off. At closing time, the appellant and the deceased used the deceased's station wagon to go eat.

In his confession to Dalton Baker of the sheriff's office, appellant described how the deceased kept calling appellant a "pussy" and insisted that appellant go with him to get a gun and finish the fight with Chandler. Because he was serving his parole, appellant initially refused to get involved in the fight. However, a scuffle resulted between the deceased and appellant. When the deceased stopped the car and exited, appellant jumped from the car and started fighting with the deceased. During the struggle, the deceased had a knife which appellant removed from him. Appellant stabbed the deceased several times. Appellant did not remember cutting the deceased's throat.

At trial, appellant recanted the confession he had given to Detective Dalton Baker and which had been admitted into evidence. Appellant further testified that after he and the deceased had left the lounge in the deceased's car, they were eventually stopped on the road by Thomas Zuniga and Matthew Mendoza. Both men were in Zuniga's car. Appellant further testified that Zuniga and Mendoza exited the car and approached the appellant who had exited the deceased's car. Mendoza had a knife and Zuniga had a gun. Mendoza told him: "You better go on. We're going to break this gringo." Appellant stated that he left and walked home. The following morning appellant testified that Zuniga came over and told him: "You'd better not say nothing about last night 'cause if you do I'm going to get you. If I can't get you I'm going to get your family." Appellant stated that he did not learn that the deceased had been killed until that afternoon.

Matthew Mendoza and Thomas Zuniga both testified that they left the lounge in Zuniga's car after the deceased and the appellant had left. They were to meet appellant and the deceased at a restaurant to eat. They found the deceased's car abandoned by the side of the road and when they parked their car, it became stuck. They were unable to find the deceased or the appellant. When their car was pulled out by a friend, Zuniga took Mendoza back to his car at the lounge. While Zuniga went home, Mendoza drove by the deceased's house but he was unable to locate him. Zuniga testified that on the morning of the 12th of October, 1984, appellant visited him and he: "told me that he did it" and "told me that Cook (the deceased) pulled a knife on him and he took it away from him." Appellant also told Zuniga that he ran after the deceased; they starting fighting and wrestling on the road; that he caught the deceased from behind; and that he stabbed him.

Appellant's two points of error are as follows:

### POINT OF ERROR NO. ONE

APPELLANT'S CONVICTION IS VOID BECAUSE HE DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

### POINT OF ERROR NO. TWO

APPELLANT (sic) CONVICTION IS VOID BECAUSE HE WAS DENIED A FAIR TRIAL.

Appellant argues he was denied a fair trial due to the ineffectiveness of his trial counsel. Accordingly we will address both points together.

In *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986) our Texas Court of Criminal Appeals adopted the standard of effective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984) by the United States Supreme Court.

The Court of Criminal Appeals in *Butler* stated the following:

... [T]he Supreme Court offered no mechanistic formula:

'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result.' ... Under *Strickland* there are two tests a defendant who seeks relief must meet. 'First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.' *Id.* Elaborating on the second showing the defendant must make, the Court said:

'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Butler,* 716 S.W.2d at 54.

Appellant cites several alleged errors and omissions by his trial counsel which, by their extent and magnitude, he contends rendered his trial counsel's representation ineffective.

Appellant claims that he was not adequately represented because his trial counsel failed to object to opinion testimony offered by the State. Investigating officer Ray Trevino was permitted to testify, without objection, that the lack of blood around the deceased's heart area indicated the deceased was already dead by the time he was stabbed around the heart area; that the blood "rubbed off" on the assailant's hand as he stabbed the deceased in the heart area; and because the area around the heart on the body of the deceased was the only area that didn't have blood on it, it indicated to him "an obvious intent to commit murder." In addition, officer Trevino was permitted to testify, without objection, which of the many stab wounds on the deceased's body was the first stab wound; that the first stab occurred inside the car while the deceased was driving the car; that the wound to the neck was administered from behind as the deceased was "trying to flee his attacker"; and that he had reached these conclusions after viewing the evidence at the scene and after he reviewed the autopsy report.

Officer Trevino's testimony was based on investigative evidence which he was permitted to interpret for the jury. His statements regarding the assailant's state of mind were not based on observations or impressions of the assailant but instead were mere surmise or conjecture derived from his "reconstructed" evidence. Such an opinion would have been subject to an objection and a motion to strike. While it is for the jury to draw conclusions from those facts known to the witness and accepted as true by the jury, the admission of opinion testimony that involves a legal conclusion must be avoided. *Hopkins v. State,* 480 S.W.2d 212, 218 (Tex.Crim.App. 1972). Accordingly, we cannot find that appellant's trial counsel's decision not to object to officer Trevino's inadmissible opinion testimony was a reasonable one. Therefore, we must now consider the second prong of the *Strickland* test: whether appellant's defense was prejudiced by trial counsel's failure to object.

We cannot conclude that the opinion testimony of Officer Trevino, which made the assailant the aggressor with "an obvious intent to commit murder" was in the eyes of the jury "sufficient to undermine confidence in the outcome." Appellant's entire defensive strategy was that Zuniga and Mendoza killed the deceased after appellant left the scene where the homicide occurred. Trial counsel's failure to object to officer Trevino's opinion testimony could not have prejudiced appellant's defense of alibi.

Additionally, in support of his contention that he received ineffective assistance from his retained trial counsel, appellant complains that his trial counsel failed at the guilt-innocence phase to submit a proposed charge on the voluntariness of confessions; failed to submit a proposed charge on the defensive theory of alibi; and failed to request limiting instructions on the use of extraneous offenses and conduct. In our opinion, trial counsel's failure to submit proposed charges on the voluntariness of confessions and the defensive theory of alibi was not unreasonable. As appellant's entire defensive theory was al-

ibi, we are not persuaded that the failure to submit a proposed charge on voluntariness affected his defense.

 It is axiomatic that a defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence. *Sanders v. State,* 707 S.W.2d 78, 80 (Tex. Crim.App.1986); *Booth v. State,* 679 S.W.2d 498, 500 (Tex.Crim.App.1984); *Lugo v. State,* 667 S.W.2d 144, 146 (Tex. Crim.App.1984). In Texas, alibi has always been characterized as a defense and not as an affirmative defense. *Miller v. State,* 660 S.W.2d 95, 97 (Tex.Crim.App.1983) and cases cited therein. In asserting alibi the defendant simply denies the possibility of his having committed the crime. In contrast all statutory affirmative defenses generally apply to justify his admitted participation in the act. Alibi evidence tends to disprove one essential factor in the prosecution's case, the presence of the accused at the place and time of the alleged crime. *Miller,* 660 S.W.2d at 96.

In regard to appellant's trial counsel's failure to submit a proposed charge on alibi, we are of the opinion that based on the facts in this case appellant was not entitled to a charge on alibi. Appellant denied the possibility of his having committed the crime. Appellant testified that he was not present at the place and time of the murder of the deceased. Appellant testified that Zuniga and Mendoza caused him to leave the scene before the deceased was killed. The trial court's charge instructed the jury in the following manner:

## II.

So that you may better understand the nature of the offense with which the defendant is charged, I now define certain terms and words.

'Individual' means a human being who has been born and is alive.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his condsuct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

## III.

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Joe Suniga, did, in Bexar County, Texas, on or about the 11th day of October, 1984, intentionally or knowingly cause the death of an individual, Richard Cook, by cutting the said Richard Cook's throat with a knife, you will find the defendant guilty of murder as charged in the indictment.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

 We are of the opinion that under the charge as submitted, one of the elements of the offense that the State had to prove beyond a reasonable doubt was the presence of appellant at the time and place of the alleged crime. Appellant's defense merely negated an element of the offense and accordingly he was not entitled to a charge on alibi.

 We are also of the opinion that appellant's claim that he was not adequately represented because his trial counsel failed to conduct a proper investigation is without merit. Appellant contends that his counsel was not aware of the basic facts surrounding appellant's arrest and that it resulted in his trial counsel bringing up an inadmissible extraneous offense for which he was on parole. The record reflects that appellant's trial counsel in his cross-examination of the arresting officer asked the arresting officer if the arrest was the result of a search warrant for narcotics. The officer testified that he had arrested appellant on a parole violation warrant. The attorney's failure to know the State's version of the basis for appellant's arrest may militate against a

finding of reasonableness, but there is nothing in the record to show that the arresting officer's response made any difference in the defense's case which was based on alibi. Accordingly, we find that the second prong of *Strickland* has not been met.

 Further, appellant contends that he was not adequately represented because his attorney failed to litigate pretrial motions. This claim is not supported by the record. On June 21, 1985, a motion seeking a continuance from this cause's setting of June 24, 1985, was filed by appellant's attorney. The record before us includes a letter from the Clerk of the Court dated June 25, 1985. The letter is addressed to appellant's counsel and informs the reader that this cause was "reset for trial on the merits on July 01, 1985." Trial was in fact commenced on July 1, 1985. On the second day of trial, after the jury had been selected and before appellant's arraignment, a hearing was had before the court on appellant's motion in limine which had been filed on May 15, 1985. During this pretrial hearing appellant's counsel obtained rulings by the court on his motion in limine. During the pretrial hearing, a reference was made to appellant's previously filed motion to suppress his oral or written statements. The court indicated that a hearing had been had on such motion. There being nothing to the contrary in the record, we must assume that the motion was litigated. Appellant's contention is without merit.

 Appellant further bases his claim of ineffective assistance of counsel on his counsel's failure to conduct a proper voir dire of the jury panel. First, appellant alleges that during voir dire his counsel made no objection to the prosecutor's description of self defense to the jury. In our opinion, this also is not supported by the record. The record reflects that the prosecutor was not describing self defense to the jury panel. The prosecutor was referring instead to the application of the defense of self defense in murder cases and that he did not know if it would be applied to this cause. Second, appellant

points out that his trial counsel's opening remarks to the jury panel were extremely brief; that there were no voir dire statements or questions on self-defense or the voluntariness of confessions. As pointed out before, appellant's entire defense was based on "alibi." Accordingly it is reasonable to presume trial counsel's disregard of those issues in questioning the jury panel was a trial strategy. This strategy did not render the appellant's representation at trial inadequate. There is no indication that trial counsel's decision was unsupported by the circumstances or impeded the appellant's defense.

 Third, appellant complains that his counsel failed to ask any questions of a venire person concerning the venire person's volunteered information that her uncle had been murdered in a bar. There is nothing in the record to show that the venire person's knowledge of where her uncle was murdered would have made any difference in the defense's case of alibi. Appellant's trial counsel's failure to question the venire person as to the effect that her uncle was murdered in a bar had on her, in our opinion, had no effect on appellant's defense of alibi.

 Fourth, appellant contends that his trial counsel conducted no voir dire examination during the punishment phase despite the election by appellant to go to the jury for punishment and the subsequent questioning by the prosecution of several venire person's ability to inflict a severe punishment in an appropriate case. We find this contention to be without merit. The record reflects that the prosecutor, after advising the entire venire as to the range of punishment, inquired of the panel if there was any one who could not consider the entire range of punishment. Appellant's trial counsel's failure to repeat the inquiry was not unreasonable.

 Appellant further contends that he was not adequately represented because his attorney failed to make timely and proper objections to the evidence of extraneous offenses. First, appellant alleges that the prosecutor elicited, without objec-

tion, testimony from a state's witness, Zuniga, that appellant carried a "buck-blade knife, whatever you call it" ... "a long time ago ..." Absent any evidence that appellant was in the habit of carrying such a knife, or any type of knife and particularly on the date in question, there is no showing of any effect on the defense's case. Second, appellant points out that his counsel did not object to evidence that a search warrant for narcotics was being executed at appellant's home at the same time appellant was arrested at a different location. Furthermore appellant complains that his trial counsel elicited direct testimony from appellant's wife that appellant was named in the search warrant and later elicited from appellant that the narcotics were actually found pursuant to the execution of the search warrant. This testimony was sought by appellant's counsel in seeming contradiction to his attempted attack on the warrant as a pretext to arrest the appellant. The prosecutor subsequently referred to the finding of narcotics in his closing argument without objection. Appellant also alleges that his trial counsel allowed into evidence, without objection, that appellant was on parole and, at the time of his arrest, there was a warrant for appellant's arrest for violating the conditions of his parole. Officer Trevino was also allowed to testify that appellant was selling marijuana out of his trailer house. Appellant has not shown that there is a reasonable probability that, but for his counsel's alleged unprofessional errors the result of the proceeding would have been different.

Finally, appellant claims he was not adequately represented because his trial counsel failed to object to improper argument by the prosecutor during the guilt-innocence phase. Appellant alleges that the prosecutor was permitted to mistate the "voucher rule" concerning interlineation of proffered written statements in such a way as to interject his personal opinion of appellant's written statement. Appellant further states that there was no objection to the prosecutor's unsworn testimony during argument that: "I think that this man is a liar and a murderer." We cannot conclude

that the prosecutor's argument was outside the scope of permissible jury argument. It was a reasonable deduction from the evidence.

The judgment of the trial court is affirmed.