**Johnnie GREENE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–93–00227–CR.

Court of Appeals of Texas, San Antonio.

June 19, 1996.

Mark Stevens, San Antonio, for appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for appellee.

Before RICKHOFF, LÓPEZ and HARDBERGER, JJ.

HARDBERGER, Justice.

This case involves a claim of ineffective assistance of counsel. When evaluat-

ing such an appellate point, we should examine counsel's performance in its totality. Few lawyers turn in a perfect performance in a trial—it is simply too complex a task for perfection. Still there are minimum standards of advocacy that cannot be trespassed without undermining the confidence in the conviction. When this occurs, it violates the Sixth Amendment Constitutional guarantees of effective counsel. In this case, among many errors, the defense counsel intentionally impeached his own best witness by asking her about a conviction that was not yet final. He then allowed the state to develop this testimony, opened up by him, without any attempt to object or limit the damage. The combination of aggressive advocacy by the state and no attempt by the defense to control the questioning allowed all sorts of impeachment on collateral matters. One side was running up and down the field while the other side was sitting on the bench.

Defense counsel, having played an important role in destroying his best witness, then moved on to build up the credibility of an important state's witness. This was done by asking a testifying detective, Detective Miller, if he was willing to "vouch" for "the credibility" of the key witness for the state (Roberta Rose). Not surprisingly one state witness was more than willing to vouch for another state witness, and did so. Needless to say the state would have never been allowed to ask such a question.

When it came time to submit the charge to the jury, defense counsel did not request a jury charge on the defendant's defense of alibi or object to the defective charge on the law of parties or the improper charge on *mens rea* instructions. We conclude that defense counsel's performance was below the bare minimum required by *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). We reverse and remand.

### Facts

On the night of March 4, 1992, Jimmie Lopez was shot in the abdomen when he answered his front door. Lopez identified the appellant, Johnnie Greene, as the man who shot him. During the trial, Lopez told the jury that the man he saw on his porch that night was a light-complexioned black male with a small moustache, wearing an earring in his left ear. Lopez testified that the man he saw had something wrong with his eye. Lopez then felt another bullet hit his side. He heard and saw a number of bullets coming through the door of his apartment.

Earlier on the day of the offense, Lopez had intervened to assist Deltha Costley when she was attacked by a man named Kasey Woodard. Lopez had poked Woodard in the ribs with an umbrella in order to get him off of Costley. Woodard was shot by Costley's father.

Officer Harold Bellamy was dispatched to Lopez's apartment. Officer Bellamy asked Lopez to provide a description of his assailant and, in response, Lopez described the man as a dark-complexioned black male, about 30 years old, standing five feet nine or ten inches tall, and weighing about 190 to 200 pounds. Officer Bellamy was next contacted by two security guards who worked at the apartment complex. The security guards reported seeing six black men running north through the complex and over a fence. One of the men, Willis Sterling, who was fat, fell behind, and was caught but let go. He was picked up again by the San Antonio Police and identified by the security guards. However, Lopez failed to pick Sterling out of a photo spread conducted about a month after the shooting.

Several months went by before Johnnie Greene was considered a suspect in the case. In July of 1992, Detective Miller was contacted by a woman named Roberta Rose, who told him that Johnnie Greene had been involved in Lopez's shooting. Detective Miller put together a photo spread containing the picture of Johnnie Greene which he showed to Lopez on July 30, 1992. On that date, Lopez picked Greene's picture from the photo spread and identified him as his assailant. Roberta Rose later testified at trial that she and Maritza Miranda arrived at Greene's father's house at 9:00 p.m. on the day of the shooting. She testified that when she arrived Greene was on the phone and upset. She understood from the conversation that a

man named "Kasey" (Woodard) had been shot and was in the hospital. According to Rose, Greene made the comment, "Let's get even; Let's get the Mexican." Following the phone conversation, Greene, Willis Sterling, and a man named Rick left the apartment taking their guns with them. After Greene returned later in the evening he told her that she didn't "know nothing" and not to say anything or she might "not live to see tomorrow."

Greene was indicted for the offense of attempted murder. He was tried by a jury and found guilty. His punishment was assessed at twenty (20) years imprisonment and a $10,000 fine. Greene now appeals alleging that his trial lawyer rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. Greene also alleges ineffective assistance of counsel under Article I, § 10 of the Texas Constitution. Due to our disposition of the first point of error under the United States Constitution, we do not need to address appellant's independent state constitutional claims.

## Ineffective Assistance of Counsel

■ The right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. In order to prevail on a claim of ineffective assistance of counsel, appellant must meet the two part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must show the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adver-

sary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064. The actions of trial counsel are presumed to have been reasonably effective and to have been exercises of strategy or professional judgment. *See Jackson v. State*, 877 S.W.2d 768, 771–772 (Tex.Crim.App.1994); *Delrio v. State*, 840 S.W.2d 443, 446–447 (Tex.Crim.App.1992). Due to the wide range of lawyering skills and judgment, a lawyer's performance is not required to be perfect. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984); *Green v. State*, 899 S.W.2d 245, 247 (Tex. App.—San Antonio 1995).

## Errors Concerning Maritza Miranda

■ Greene called a woman named Maritza Miranda to establish his alibi defense and to impeach the testimony of Roberta Rose. However, the direct examination by the defense attorney of Miranda got off to a poor start. She was asked, by him, if she had gotten "in trouble" for writing hot checks. She had, but there had been no final conviction, thus the inquiry, by anyone, was improper. Miranda then testified that on the day Lopez was shot, she was with Roberta Rose at a club when they learned that Woodard had been injured. Miranda stated that throughout the day she and Rose never once saw Greene or Sterling, and that Miranda never spoke with Greene, Sterling or Woodard that day. This testimony impeached that of the state's witness, Roberta Rose.

On cross-examination, the state, seeing the matter opened up by the sponsoring defense attorney thoroughly asked the details of Miranda's guilty plea on the hot check charge. The prosecutor asked her if she bought Greene a thousand dollar suit. Miranda denied this allegation. The state went into all of the plea papers and an unsigned statement she gave to the state's investigator, Isaac Lee, in regards to her case. The defense counsel made no objection to this entire line of questioning. Under the state's questioning, Miranda admitted that she lied to Investigator Lee because she was scared. The prosecutor also approached the bench and asked the court if he could go into the part of her statement in this previous case where

she alleged that Greene beat her on a regular basis. The judge was reluctant to allow the state to pursue this line of questioning, but defense counsel failed to make any objections so it was allowed.

The state then called Lee, theoretically as a rebuttal witness, but there was nothing to rebut as Miranda had already admitted to the extraneous offense of hot check writing and already testified that she lied to the investigator. The impeachment of this unfortunate witness was more than complete. By her own admission she was a crook and a liar, and unreliable in all respects. The state's investigator could scarcely run her down more, but his testimony was used to target Greene. Lee testified that Miranda told him that she was afraid of Greene, and that he could tell she was afraid of him. Lee also indicated that he accurately recorded her statements concerning Greene and his guilt with her in writing the hot checks. The hot checks were for $1,000 suits for Greene.

During summation, the prosecutor argued both the testimony of Miranda and Lee. No objections were made by the defendant's counsel. The prosecutor argued that Miranda was afraid of Greene. He also argued that Greene beat her up regularly and forced her to write hot checks. In summary, that Greene was mean and had intimidated Miranda to come into court and lie.

■ Appellant points to several errors committed by defense counsel during Miranda's testimony. First, defense counsel needlessly impeached Miranda, his own witness, by proving her non-final conviction which was inadmissible under Texas Rule of Criminal Evidence 609. The state concedes that Miranda was not subject to impeachment for a conviction not yet final. There is no question that this was error. *See* TEX. R.CRIM. EVID. 608(b), 609; *Garcia v. State*, 730 S.W.2d 202 (Tex.App.—San Antonio 1987, no pet.). However, the failure to object to inadmissible evidence, even extraneous offense evidence, does not necessarily constitute ineffective assistance. *See Ybarra v. State*, 890 S.W.2d 98, 113 (Tex.App.—San Antonio 1994, pet. ref'd); *Anderson v. State*, 871 S.W.2d 900, 904 (Tex.App.—Houston [1st Dist.] 1994, no pet.); *Francis v. State*, 792

S.W.2d 783, 784–785 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). But there is no logical reason why defense counsel would want to impeach the credibility of his most important witness. This can only be evidence of ineffectiveness of counsel.

■ Next, appellant points out that defense counsel failed to object to the state's improper questions to Miranda detailing the underlying facts of her guilty plea in another case. Specifically, appellant points to the impeachment on collateral issues such as her hot check purchases, including a $1,000 suit for appellant. This type of impeachment is improper. *See Murphy v. State*, 587 S.W.2d 718, 723 (Tex.Crim.App.1979). We agree, as we did above, that injection of improper impeachment even by the defense attorney is not, by itself, dispositive of ineffectiveness of counsel. *See Kendrick v. State*, 729 S.W.2d 392, 395 (Tex.App.—Ft. Worth 1987, pet. ref'd); *Gonzales v. State*, 626 S.W.2d 888, 891–93 (Tex.App.—San Antonio 1981, pet. ref'd). But it is to be considered in looking at the totality of the issue.

■ Appellant next argues that the evidence, developed on cross-examination, of threats and violence by appellant against Miranda was also inadmissible. The state counters that the evidence was admissible. The reasons listed for admitting misconduct evidence in Rule 404(b) are not exclusive. *See Banda v. State*, 768 S.W.2d 294, 296 (Tex. Crim.App.1989); *Peoples v. State*, 874 S.W.2d 804, 809 (Tex.App.—Fort Worth 1994, pet. ref'd). Evidence of threats or coercion of the accused towards a witness is admissible to show the accused's consciousness of guilt. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex.Crim.App.1983); *Peoples*, 874 at 809. The state says that the threats and abuse of Miranda by appellant were relevant in this case to establish bias or motive to deceive on Miranda's part.

*Posey v. State*, 738 S.W.2d 321 (Tex.App.— Dallas 1987, pet. ref'd) is similar to the present case. In *Posey*, the defendant was charged with resisting arrest, and relied on the defense of self-defense. *Id.* at 322. During cross-examination, the prosecutor asked the defendant whether she and her husband

had engaged in previous violent arguments. Defense counsel's objections were overruled. The prosecutor asked the defendant whether she had ever told anyone she did not want to return home because she did not want to face her husband's beatings; whether she had ever told anyone that she was going to kill herself rather than face another beating; and whether she and her husband had an altercation in the courtroom the week before. Again, defense counsel objected that these matters were collateral, and the objection was overruled.

In *Posey,* as here, the state justified its line of questioning by "portraying the testimony as *an illumination of appellant's state of mind and the effect it might have on her testimony before the jury." Id.* (emphasis added). In resolving the issue against the state, the court of appeals first pointed out that the appellant had not directly put in issue the subject of the peaceful nature of her marital relationship. Indeed, the court found, the number of domestic altercations which might have occurred during the marriage had no relevancy to the resisting arrest charge against the appellant. "The state cannot create a contested issue through its cross-examination and then claim that such issue 'opens the door' to rebuttal evidence." *Id.* In a similar case, the Court of Criminal Appeals concluded that a trial counsel who failed to object to a cross-examination which went into extraneous offenses and arrests of the appellant and his relatives was ineffective assistance of counsel. *Cude v. State,* 588 S.W.2d 895 (Tex.Crim.App.1979). Likewise, in this case trial counsel failed to object to any of these extraneous offenses. While this damaging testimony was coming into evidence there were no objections.

■ Appellant also argues that the error in injecting inadmissible evidence or failing to object to inadmissible evidence, was compounded by counsel's failure to request a limiting instruction. The failure to request a limiting instruction is not, by itself, ineffective counsel. *See Johnson v. State,* 629 S.W.2d 731, 736 (Tex.Crim.App.1981); *Wilson v. State,* 730 S.W.2d 438, 444 (Tex.App.—Fort Worth 1987, pet. ref'd); *Abbott v. State,* 726 S.W.2d 644, 649 (Tex.App.—Amarillo

1987, pet. ref'd). But it should have been done, and is a factor we consider in assessing the totality of the quality of representation.

### Evidentiary Errors Not Involving Maritza Miranda

■ Appellant complains that counsel was ineffective for having asked questions that bolstered the state's case. The disputed questions concerned Detective Miller. During Miller's cross-examination, his answers vouched for Roberta Rose's credibility. Roberta Rose was one of the state's main witnesses. The state's case revolved, at least to some degree, around whether the jury believed her or Miranda. After asking Detective Miller several questions in which his answers corroborated Rose's testimony, defense counsel and Miller had the following exchange:

Q: Based on what you know about her (Roberta Rose), are you willing to vouch for her credibility?

Miller: Yes. Based on what she told me, the hot check proved correct. Mr. Greene being associated with these two other individuals is correct. So I have no reason to doubt her. I did not prove her credibility wrong. If she told me they were associated with these two individuals and it turned out to be false, then I would start doubting her.

Defense counsel's questions would have been objectionable if the state had asked them. *See, e.g., Weathersby v. State,* 627 S.W.2d 729, 730 (Tex.Crim.App.1982). Again the state is correct in noting that the failure to object to even inadmissible evidence is not necessarily ineffective assistance of counsel. Here, though, defense counsel not only failed to object, but actually elicited the inadmissible evidence. There is no coherent trial strategy at work here. It is simply an error, one of which we consider in assessing the total picture.

Appellant points out that counsel failed to object to prejudicial inadmissible hearsay. Identification of appellant as the perpetrator was the central issue in the case. Mr. Lopez, the victim, described how he selected appellant's photo from the array. Mr. Lopez's

wife also testified and bolstered her husband's testimony through inadmissible hearsay—without objection from defense counsel. However, Mrs. Lopez's testimony about her husband's previous out of court identification was in fact, admissible. *See Solomon v. State*, 854 S.W.2d 265, 268 (Tex.App.—Ft. Worth 1993, no pet.); Tex.R.Crim. Evid. 801(e)(1)(C).

### Charge Errors

The appellant next raises three allegations of ineffective assistance as a result of counsel's failure to either request a particular charge, or to object to the charge as submitted. In this case, appellant put on evidence of alibi. He argued that he did not shoot Mr. Lopez but instead was with his mother at the apartment of his sister.

The defense of alibi arises where there is evidence that the accused is at a place where he could not have been guilty of participating in the offense. *Arney v. State*, 580 S.W.2d 836, 840 (Tex.Crim.App.1979). A defendant is generally entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether it is strong, feeble, unimpeached, or uncontradicted. *Villarreal v. State*, 821 S.W.2d 682, 685 (Tex.App.—San Antonio 1991). However an alibi is not the type of defense that entitles a defendant to an instruction. *See Holliman v. State*, 879 S.W.2d 85, 87 (Tex.App.—Houston [14th Dist.] 1994, no pet.); *Villarreal v. State*, 821 S.W.2d at 686; *Villarreal v. State*, 809 S.W.2d 295, 298 n. 2 (Tex.App.—Corpus Christi 1991, pet. ref'd).

Alibi is not a statutory defense and it is not an affirmative defense. Alibi is not a defense within the accurate meaning of the word, but is a fact shown in rebuttal of the state's evidence. Therefore, it does not demand a specific instruction from the court. *Villarreal*, 821 S.W.2d at 685. Furthermore, this court has previously held that failing to secure an instruction on alibi is not necessarily ineffective assistance of counsel. *Suniga v. State*, 733 S.W.2d 594, 598–99 (Tex.App.—San Antonio 1987, no pet.). Therefore, in this case, defense counsel's failure to request an instruction on alibi was not, by itself, ineffective assistance of counsel. However,

given that appellant's defense hinged on his alibi, it is difficult to understand why any competent defense counsel would fail to at least try to get an alibi instruction.

Appellant complains that defense counsel failed to object to the trial court's charge on the law of parties. The state requested a jury charge on the law of parties, and an application paragraph applying the law to the facts of the case. Though defense counsel initially agreed with the state's request, he ultimately changed his mind. Counsel did object to the court's decision to charge on the law of parties, but failed to object to the form of that charge, which was defective. Appellant argues that the charge on parties was fatally defective because it was insufficient to inform the jury as to the specific mode or modes of conduct enumerated in § 7.02(a)(2) of the Penal Code. *See Johnson v. State*, 739 S.W.2d 299 (Tex.Crim.App.1987).

Appellant also contends that defense counsel failed to preserve reversible error by failing to object to the trial court's defective charge on *mens rea*. On the element of *mens rea* for commission of the offense of attempted murder, the court instructed the jury as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct *when it is his conscious objective or desire to engage in the conduct* or cause the result.

A person acts knowingly, or with knowledge, *with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.* (emphasis supplied).

Murder is a "specific result" offense. *Wallace v. State*, 763 S.W.2d 628 (Tex.App.—San Antonio 1989, no pet.). As such, the culpable mental state relates not to the nature of the circumstances surrounding the charged conduct, but to the result of the conduct. *Id.* Failure to timely object to a charge limiting the culpable mental states to the prohibited result is waived unless a defendant can show egregious harm. *See, e.g., Banks v. State*, 819 S.W.2d 676, 679 (Tex. App.—San Antonio 1991, pet. ref'd). The

state concedes that objections to the charge on the basis of failure to apply the law of the parties to the facts, or to limit the culpable mental state to result only, *mens rea* would have been well founded. The state argues that these particular omissions do not undermine confidence in the reliability or fundamental fairness of the verdict. See *Lockhart v. Fretwell*, 506 U.S. at 371–73, 113 S.Ct. at 844. The state says the charge error concerning *mens rea* did not result in harm to the appellant because the specific intent of the actor was never at issue in the trial. The only real dispute was the identity of the actor. Therefore, the appellant has failed to demonstrate that he was harmed by this particular error. Appellant argues that the *Johnson* case controls determination of the harm arising from the error concerning the parties charge. In *Johnson*, the court of criminal appeals found that, where the evidence demonstrated that a defendant's guilt was predicated upon the law of parties, the failure of the trial court to more explicitly apply the law of parties to the facts of the case upon request constituted "some harm" under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984) and required reversal. 739 S.W.2d at 305. In this case, defense counsel made no objection to the charge, failing to preserve potentially reversible error. The charge error, standing alone, does not conclusively prove ineffective assistance of counsel. But it is another indication of defense counsel's overall failure to represent appellant in the trial of this cause.

### Closing Argument

Finally, appellant alleges that defense counsel was also ineffective in jury argument. According to appellant, defense counsel attempted to argue the law under Rule 404(b), pertaining to the admission of appellant's extraneous offenses, but was precluded from that argument because it was outside the charge. Defense counsel also tried to argue the mens rea aspect of the case, again outside the charge. According to appellant, much of the defense argument was wandering and unfocused. At no time did defense counsel argue the defense of alibi but, rather, the credibility of his own witnesses. The state responds that defense counsel's argument placed the defense of alibi/misidentification before the jury by arguing that the state's witnesses were not credible. We are not persuaded though that defense counsel's closing argument was ineffective assistance of counsel standing alone. It is simply a factor to be considered.

### Conclusion

Counsel's effectiveness must be judged by looking at the totality of the circumstances. "Although, no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel such a holding." *Ex parte Welborn*, 785 S.W.2d 391, 396 (Tex.Crim.App.1990). The same is true in this case.

Here, although each mistake standing alone is not ineffective assistance of counsel, when all of the mistakes are taken together this court's confidence in the result is undermined. Trial counsel's mistakes were: 1) needlessly impeaching his own witness; 2) failing to object to improper cross-examination of his own witness, 3) bolstering one of the state's primary witnesses; 4) failing to request a jury charge on appellant's defense of alibi; 5) failing to object to the defective charge on the law of parties; 6) failing to object to the improper *mens rea* instructions; and 7) his failure to object to the admission of appellant's extraneous acts of misconduct on collateral issues. When all of these errors by trial counsel are taken into account the factfinding process is rendered unreliable. Therefore, "the performance of counsel failed to meet the standard of reasonably effective assistance of counsel established by the Supreme Court in *Strickland v. Washington*." *Id.* We are aware that defendant has a difficult burden in seeking a reversal on these grounds. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Nevertheless there are Constitutional guarantees that cannot be abrogated. We also recognize that when a trial defense counsel is progressively error prone and ultimately ineffective there is no

remedy available to the trial court in retained cases. There are occasionally cases where even minimal standards are not reached, and the conviction must be reversed. We hold this to be one of those cases. We sustain appellant's first point of error.

The judgment of conviction is reversed and the cause is remanded for a new trial.