Roy  Thomas  SLEDGE,  Appellant,

v.

The  STATE  of  Texas,  Appellee.

No.  855–83.

Court  of  Criminal  Appeals  of  Texas,
En  Banc.

Dec.  19,  1984.

Bruce Anton, Dallas, for appellant.

Henry Wade, Dist. Atty., Karen Chilton Beverly, Randall Isenburg and George West, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of aggravated robbery. His punishment was assessed by the jury at ten years confinement in the Department of Corrections. We granted appellant's petition for discretionary review to consider the holding of the Dallas Court of Appeals, delivered July 29, 1983 in an unpublished opinion, that testimony from witnesses who were present when complainant identified appellant at the scene of the robbery was admissible to corroborate that complainant's incourt identification testimony.

While sufficiency of the evidence is not contested here, we set out the facts in as much as they are relevant to our resolution of this issue.

The complainant, Pearl Rose Findley, was an 86 year old Dallas resident. She testified that on the morning of November 18, 1981 she was in her kitchen cooking breakfast for her son, Daniel Findley, who was in the back yard.[1] As she was about to call her son in to breakfast she was grabbed by a man who was wearing a dark suit. Complainant recognized this man as having appeared at her door twice before, "posing for a insurance man." Her assailant placed his left hand around complainant's neck, and with his right hand he held a knife to her throat, threatening to cut her throat should she scream. The complainant screamed anyway. Her assailant then slung her to the floor, and, when asked what he wanted, demanded money. Complainant told him she had some money in the next room and proceeded to get it. From a back door that was ajar she called out to her son. Her assailant then fled. It was subsequently discovered that the front door had been broken into.

At trial complainant was called upon by the State to identify her assailant if he was in the courtroom. After stating that her vision was "20/20" and that she could see the whole courtroom from the witness stand, the complainant failed to identify anyone. Asked to leave the stand and survey the courtroom, she settled upon an . individual sitting as a spectator in the courtroom. At this point the prosecutor directed her attention to appellant's table. Complainant then picked out appellant and stated that she was "sure that's him." However, before resuming her chair on the witness stand, complainant pointed to someone in the courtroom, sitting on the second row,[2] and stated that "that one yonder looks more like him. I believe that's him right there."[3] At this point, again prompted by the State, complainant tentatively identified appellant.

Later in its case in chief the State called Barbara Riddle, complainant's granddaughter in law. Riddle testified that she arrived at the complainant's house shortly after the events related above, and that she

---

1. Mr. Findley testified that he was "around sixty-two, somewhere in there ...."

2. It is unclear whether this is the same spectator she had previously scrutinized.

3. In final argument on guilt/innocence appellant's counsel stated that complainant had "identified" every black male in the courtroom. However, on the cold record before us we can only determine with certainty as much as is stated in the text above.

called the police. Ten minutes later the police arrived and obtained a description from complainant of her assailant. The policemen left, but soon returned with appellant. Over objection that it constituted improper bolstering and inadmissible hearsay, Riddle was allowed to testify that complainant stated: "This is the man, but he's changed clothes." The State also called Dallas police officer E.W. Head, who confirmed Riddle's testimony that complainant had identified appellant as her assailant when he was brought before her at the scene. Head testified that based on complainant's description he went to appellant's house.[4] Appellant agreed to accompany Head back to the scene, where, on the sidewalk in front of complainant's house, she identified him as her assailant.

Appellant contends that testimony of complainant's granddaughter in law and that of the police officer constituted an unwarranted bolstering of identification testimony of complainant. Appellant relies on *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965), wherein it is stated:

> "It is the rule that while a witness who has identified her assailant at the trial may testify that she also identified him while he was in custody of the police, others may not bolster her *unimpeached* testimony by corroborating the fact that she did identify him. See: *Reddick v. State*, 35 Tex.Cr.R. 463, 34 S.W. 274; *Weaver v. State*, 68 Tex.Cr.R. 214, 150 S.W. 785; *Fortune v. State*, 96 Tex.Cr.R. 569, 259 S.W. 573; *Lucas v. State*, 160 Tex.Cr.R. 443, 271 S.W.2d 821." [5]

388 S.W.2d at 950–951. The State in turn relies on *Roney v. State*, 632 S.W.2d 598 (Tex.Cr.App.1982), and argues that inasmuch as an attempt was made at trial to impeach complainant's identification of appellant, the third party testimony relating complainant's at the scene identification became admissible. .

■ The general rule is that third party testimony of an extrajudicial identifica-

tion by a complainant is not admissible to support that complainant's own identification testimony. *Lyons v. State*, supra. Such evidence would constitute corroboration where none is required, and would simply "bolster" the complainant's identification of a defendant. "Bolstering" occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party. *Pless v. State*, 576 S.W.2d 83 (Tex.Cr.App.1979). Once identification testimony of that complainant is impeached, however, third party corroboration may become admissible as a method of rehabilitating the witness. Conceptually, corroboration following impeachment is not to be considered "bolstering." Hence, third party testimony as to an extrajudicial identification will be admitted where it serves to rehabilitate a complainant's identification testimony that has been subjected to impeachment. See *Beasley v. State*, 428 S.W.2d 317 (Tex.Cr.App.1968).

■ Current caselaw seems to indicate that an attempt to impeach *any* aspect of a complainant's identification testimony will pave the way to introduction of the kind of third party testimony at issue in this case. See *Roney*, supra; *Smith v. State*, 520 S.W.2d 383 (Tex.Cr.App.1975); *Franklin v. State*, 606 S.W.2d 818, at 823–824 (Tex.Cr.App.1979) (reversed on other grounds on rehearing); *Frison v. State*, 473 S.W.2d 479 (Tex.Cr.App.1971). Such an interpretation of the rule, however, is so broad as to threaten to lose sight of the rationale which engendered it. Before third party accounts of a complainant's extrajudicial identification become admissible, it should be determined by a careful analysis of the facts of the particular case that such evidence will serve to rehabilitate the complainant on the specific point upon which he has been impeached or attacked.

We find support for this proposition in the earliest case cited in *Lyons*, supra. *Reddick v. State*, supra, was a rape case

---

4. There was testimony that appellant's was the only black family residing "in that immediate area."

5. Emphasis supplied.

which the Court decided in 1896. Apparently in the guise of establishing "outcry" the State introduced testimony from the Sheriff that the victim had identified her assailant at a lineup shortly after commission of the offense. The Court observed that the State was entitled to show only the *fact* of "outcry," but not the details or underlying circumstances, and that at any rate the lineup identification did not constitute "outcry" since the victim had already complained to her brother in law of the incident. The sheriff's testimony was held inadmissible. In so holding, the Court observed:

"... If the defendant attempts to prove that [the victim] charged somebody else with the crime, or that she said that she did not know who was the guilty party, the state would have the right to show that, soon after the transaction, she charged the defendant with being the person. If the defendant attempts to prove that her testimony has been recently fabricated, as to defendant being the man, the state would have the right to show that she had stated, soon after the transaction, that the defendant was the man. If the defendant attempts to show that improper influences have been brought to bear upon the prosecutrix, or any other witness, to accuse the defendant of the crime, the state would have the right to prove that, before these influences were applied, she told the same tale as she swears to now upon the trial. Except as to the right to prove her complaint, the prosecutrix in a rape case stands precisely on the same ground, and

no better, than a witness in any other case."

In each of the scenarios hypothecated in *Reddick*, third party testimony of a complainant's out of court identification would have a direct rehabilitative function.[6] The same cannot be said of the instant case.

Unlike the complaining witness in *Lyons*, supra, the complainant in the instant case did *not* herself testify regarding her at the scene identification of appellant. On cross-examination she *was* asked a question relating to the description she gave to the policemen who arrived after the incident. The entire cross-examination consists of three pages from the statement of facts, and reads in relevant part:

"Q  Miss Findley, do you remember me, Gay Cox, that came out to your house? Do you remember me when I came out to your house and talked to you that day?

A  Yeah.

Q  About the case when I was investigating it, remember that? Do you remember me coming out to your house when I was—

A  Yes, I remember.

Q  Do you remember at that time you told me that when the police first came to your house and were getting a description of the person that had come in your house that you told the police that the person had on a blue suit? Do you remember telling me that?

A  I said—I think I told you a dark suit.

Q  Did you tell the police at one time that it was a blue suit?

---

6.  Perhaps the purest example of when such evidence is admissible to rehabilitate a complaining witness is embodied in *Beasley v. State,* supra, 428 S.W.2d at 319:

"The record reflects that the injured party, Milton Bryson, testified on direct examination that at the lineup he identified appellant as the robber, who he thought 'was second from the front.'

\*  \*  \*  \*  \*  \*

Appellant called as a witness Lt. Archer, who conducted the lineup, and elicited testimony from him to the effect that appellant was in position number four in the lineup and

not position number two. On cross-examination of the officer by state's counsel, the following transpired:

'Q  Uh-huh, the Defendant here, is he the one that was selected from the showup?

A  Yes, sir, he was.' "

The Court held Lt. Archer's answer on cross-examination to be admissible to rebut the inference the defendant attempted to draw that the complainant had identified someone other than the defendant at the lineup. The State was allowed to show the fault lay in the complainant's recollection at trial, rather than with his lineup identification.

A Well, I can't understand what you're talking about.

Q Did you ever tell the police when they were asking you about a description of the culprit that came in your house—did you ever tell them that he was wearing a blue suit?

A I told—I thought I told you it was a blue—a dark suit.

Q Did you ever tell the police, the police officers, that it was a blue suit and they told you it didn't matter what color you said the suit was? Do you remember telling them that?

A I didn't tell you that, I don't—

Q Well, did you tell the police officers—forget what you told me. Maybe I got confused. But did you tell the police officers that the person had on a blue suit? Did you tell them that one time?

A No.

Q You never told the police officers anything—

A I said a dark—

Q —about—

A —suit.

Q —a blue suit?

A I said dark.

Q But you can't positively identify that suit as the one—that's one that looks like it; that's similar to it, isn't it, the suit, the one that they showed you? That's a similar suit, isn't it?

A (No response.)

Q Can you understand my question?

A Well, I don't remember telling you nothing but a dark suit."

7. The State voiced no objection on this ground, however.

8. Appellant's mother testified he had worn a brown suit on the morning of November 18. The suit was introduced as a State's exhibit. Complainant testified her assailant wore a suit "similar to" this exhibit.

9. Nor do we find the testimony of Riddle and Head to be admissible as proof in the first instance that appellant was the assailant, as might be suggested by *Lucas v. State,* 160 Tex. Cr.R. 443, 271 S.W.2d 821 (Tex.Cr.App.1954). This is so because, being an account of the statement of an out of court declarant, offered to establish the truth of the assertion made

From this colloquy the jury was in no position to know that any extrajudicial identification of appellant had taken place. Hence, testimony of Riddle and Officer Head was the first evidence of that identification.

■ Appellant's cross-examination of complainant, *ante,* assumed a fact that was not in evidence,[7] and which was never established, *viz.,* that complainant told appellant's counsel that she had told the police officers who first arrived at the scene that her assailant had worn a blue suit. Complainant steadfastly maintained she had always said the suit was "dark,"[8] Assuming that appellant had successfully elicited a prior inconsistent statement, it would have been permissible for the State to put Officer Head on the stand to testify that complainant had actually informed him at the scene that her assailant had worn a "dark" suit. Prior consistent statements are admissible in criminal cases to counter the effect of prior inconsistent statements. See C. McCormick & R.Ray, Texas Law of Evidence Civil and Criminal § 774 (Texas Practice 3rd ed. 1980). Such testimony would adequately have served to rehabilitate complainant on the point upon which she was impeached. More than this simply corroborates the identification testimony without providing any tangible rehabilitative effect.

■ Because testimony of Riddle and Officer Head constituted rehabilitative "overkill," we find that the trial court erred in admitting it over appellant's timely objections on the grounds of bolstering.[9]

therein, such testimony would constitute patent hearsay, and appellant objected to it on this ground also.

In addition we quote a passage from C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 187 (13th ed. 1972):

"Where the person who made the extrajudicial identification fails to identify the accused at the trial, the admission of the third person's testimony as to the fact of such prior identification having been made may depend upon whether the prosecuting attorney was surprised by the failure, in which case it has been held admissible, *not as substantive evidence,* but only for the purpose of nullifying or neutralizing the effect of such failure."

■ We cannot conclude this error was harmless. The probative weight of complainant's incourt identification was questionable at best.[10] There were neither other eyewitnesses to the offense nor any physical evidence connecting appellant to it.[11] The prosecutor laid a heavy emphasis upon the out of court identification during his final argument at the guilt/innocence phase of trial. We find there was more than a reasonable possibility that testimony of Riddle and Officer Head contributed to appellant's conviction. *Collins v. State,* 602 S.W.2d 537 (Tex.Cr.App.1980); *Ward v. State,* 657 S.W.2d 133 (Tex.Cr.App.1983); *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App. 1977).[12]

We therefore reverse the judgment of the court of appeals and appellant's conviction and remand the cause for a new trial.[13]

ONION, P.J., and W.C. DAVIS, McCORMICK and CAMPBELL, JJ., dissent.

In this context it should be noted, first, that there was not a total failure by the complainant to identify appellant as her assailant in this case. Second, there was no showing of surprise on the part of the State. To the contrary, it appears the State had Riddle and Head present for this one day long trial in anticipation that complainant would have trouble making a positive identification. In the case of Riddle it appears that the *sole* reason for her testifying was to bring in evidence of the extrajudicial identification. For these reasons the rationale quoted above will not justify admission of the third party testimony.

10. See footnote 3, *ante.*

11. The only items of physical evidence introduced by the State at guilt/innocence were the brown suit, see footnote 8 *ante,* and a pocket knife. Officer Head testified that on an earlier occasion he had been called to appellant's residence and told that appellant had attacked his brother with this pocket knife. The complainant testified she had only gotten a "glimpse" of the knife that was held to her throat, and could say only that the pocket knife introduced by the State was "about like" that wielded by her assailant.

12. Indeed, we are not sure that on the record before us, with or without the testimony of

Riddle and Officer Head, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983). However, sufficiency of the evidence was not raised by appellant on appeal.

13. In view of our disposition of this issue, we need not address appellant's second ground for review, wherein he argued that the hearsay testimony of Officer R.D. Lewis constituted reversible error. Lewis testified that according to what he had been told by "people at the census deal where they keep records of [student] attendance," appellant had finished the ninth grade at Carter High School. This testimony was intended to rebut defensive testimony that appellant was partially retarded and never got beyond seventh grade in special "retarded" schools. Hence, Lewis' testimony may well have "seriously impinged" on appellant's defensive position that he had not sufficient mental capacity to "pose as a insurance man," as complainant testified. See *Hayter v. State,* 541 S.W.2d 435 (Tex.Cr.App.1976). However, we reserve judgment on this question. We do note that the State concedes Lewis' testimony constituted hearsay. It should not be admitted again on retrial, if any.