**Woody SOLOMON**

v.

**The STATE of Texas.**

**No. 2–92–248–CR.**

Court of Appeals of Texas,
Fort Worth.

May 19, 1993.

J. Rex Barnett, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Betty Marshall, Charles Mallin, John Stride and Robert Mayfield, Assistants, Fort Worth, for appellee.

Before HILL, C.J., and FARRIS and DAY, JJ.

## OPINION

DAY, Justice.

Woody Solomon appeals his conviction of aggravated sexual assault of a child. Tex.Penal Code Ann. § 22.021(a)(1)(B)(ii) and (2)(A)(ii) & (iv) (Vernon 1989). After a jury trial, the court assessed punishment at 40 years confinement.

We affirm.

In his first point of error, Solomon challenges the sufficiency of the evidence to prove that he was the individual who committed the sexual assault. In point of error two, Solomon complains the trial court improperly admitted a police officer's testimony regarding an eye witness's prior identification of Solomon. By his third point, Solomon contends the jury charge was fundamentally defective.

 In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). When determining sufficiency of the evidence to sustain the conviction, the reviewing court must consider all the evidence admitted before the trier of fact at the guilt/innocence trial. *Villalon v. State,* 791 S.W.2d 130 (Tex.Crim.App.1990). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on reh'g).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

 The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). If there is evidence that establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See id.*

The standard for review is the same for direct and circumstantial evidence cases. *Butler v. State,* 769 S.W.2d 234, 238 (Tex. Crim.App.1989).

 Texas law requires the State to prove, beyond a reasonable doubt: (1) the offense was actually committed; and (2) the accused was the person who committed or participated in the crime. *Reagor v. State,* 816 S.W.2d 481, 483 (Tex.App.—Dallas 1991, pet. ref'd). In his first point of error, Solomon complains only that the State failed to establish the second element of this test.

The State produced several witnesses to prove its case: (1) C.C., the complainant; (2) C.W., a friend of the complainant; (3) R.Y., a friend of the complainant; (4) Kelly Ray Jobe, an acquaintance of Solomon's; (5) Bradley Ray Sargent, Solomon's cellmate; (6) Arvin Royce Carter, a detective for the River Oaks Police Department; and

(7) Daniel Chisholm, a criminal investigator for the River Oaks Police Department.

The defense produced two witnesses: (1) Gloria Solomon Williams, Solomon's mother; and (2) Solomon himself.

C.C. testified as follows: Early in the morning of September 24, 1991, fifteen-year-old C.C. awoke and felt something grabbing her left leg and crotch area. She looked at her clock and saw that it was 5:24 a.m. C.C. then saw a male figure kneeling beside her bed, whom she thought might be her boyfriend. The person placed a pair of shorts over C.C.'s face, covering her eyes, put a knife to her throat, and threatened to kill her if she did not cooperate. C.C. touched the person's head, and felt curly hair. C.C. knew then the person was not her boyfriend because her boyfriend had straight hair. C.C.'s assailant forced her to lie on her bed while he sexually assaulted her. C.C. could not see her attacker during this time because he kept a pillow over her eyes.

At around 7:20 a.m., C.C.'s friends, C.W. and J.W., came to C.C.'s window, as usual, on their way to ride the school bus. C.C.'s attacker left C.C.'s room, instructing her to keep her eyes covered. Once her bedroom door was shut, C.C. got up, put a sheet around herself, opened the door, and saw her assailant running down the hall. Fearing for her life, C.C. shut her door again. C.C. heard the person run out the back door.

C.C. described her assailant as a black male of medium build and medium-tall height. He wore a black cotton T-shirt and brown or beige shorts like Docker shorts. Although C.C. testified that she did not get a good look at his face, she identified the person in court as Solomon.

Fourteen-year-old C.W. gave the following testimony: Around 7:00 a.m. on September 24, 1991, she walked to C.C.'s house on her way to the bus stop. It was neither "real dark" nor "real bright" outside, and there were no lights on in C.C.'s house. C.W. noticed the screen from C.C.'s window lying next to the window, and the window was up.

When she looked in the window, C.W. saw two people on C.C.'s bed. She was unable to see clearly who they were because it was dark. Commotion followed, after which C.W. heard C.C.'s back door slam.

C.W. then saw someone on a ten-speed bicycle leaving the next-door neighbor's driveway. He was a black male, 19 or 20 years old, rather tall, muscular, wearing a black shirt and beige shorts. C.W. had never seen the man before. C.W. observed the man's face from about ten yards away. At trial, C.W. identified the man she saw at C.C.'s house as Solomon.

Daniel Chisholm testified that, on the day of the offense, C.W. identified Solomon from a six-man photospread as the person C.W. had encountered earlier that morning. When Chisholm went to arrest Solomon, a ten-speed bicycle was lying in front of Solomon's house.

Fifteen-year-old R.Y. testified as follows: On September 24, 1991, at around 7:00 a.m., he was taking out the trash when he saw a man riding away from C.C.'s house on a dark-colored ten-speed bicycle at a high rate of speed. The man passed in front of R.Y. as R.Y. was standing in his driveway, about twenty feet away. R.Y. described the man as tall, skinny, wearing dark clothes, with short hair. R.Y. thought the man was black. R.Y. glimpsed the man from the side and also saw a little of the front of the man's face. At trial, R.Y. stated the man he saw on the bike looked like Solomon.

Kelly Ray Jobe testified: He lived two houses down the street from C.C. and knew her personally. Jobe had met Solomon on several occasions prior to September 24, 1991, and Solomon's transportation was usually a yellow ten-speed bicycle. On one occasion, Solomon was at Jobe's house when C.C. was walking across the street. Solomon said he would like to have sex with C.C. Another time Solomon said he would like to "fuck" C.C.

Bradley Ray Sargent gave the following testimony: At the time of trial, he was incarcerated in the Texas Department of Criminal Justice for cocaine possession.

His sentence for the cocaine possession was the result of a plea bargain. Sargent also had two prior convictions for burglary of habitation and had successfully completed probation in Oklahoma for forgery.

While awaiting trial on cocaine possession charges, Sargent shared a jail cell with Solomon for two weeks. During that time Solomon described in detail his sexual assault on C.C. Sargent decided to tell the police about what Solomon had told him because he "thought that was sick."

Arvin Royce Carter testified: The day of the offense, he prepared a photospread and showed it to R.Y. Carter asked R.Y. if he recognized the person he saw on the bicycle in the photospread. R.Y. told Carter Solomon's picture looked a lot like the person R.Y. saw ride a bicycle past his house. R.Y. also wrote "It looks a lot like him" next to Solomon's picture.

On September 30, 1991, Carter escorted Solomon to the telephone. At that time, Solomon asked if he was going to get his tennis shoes back. Carter told Solomon his shoes were in the property room. Solomon responded, "You mean I left footprints?" and then rephrased his question.

Solomon's fingerprints were found on the inside of the bent screen that was removed from C.C.'s window. The law enforcement officers who located and identified the prints both testified that it was impossible to pinpoint the time when the fingerprints were made. Once made, fingerprints can remain on an object for days, weeks, or even years.

Gloria Solomon Williams testified as follows: Around 4:30 a.m. on September 24, 1991, Solomon went into the bedroom he sometimes shared with his mother (Williams) and turned the light on, waking Williams up. Solomon went to bed at that time, and Williams eventually went back to sleep. Solomon was still in bed when Williams got up at 5:30 or 6:00 a.m. and when she left the house a few minutes before 7:00 a.m.

Solomon denied sexually assaulting C.C. Solomon testified that he arrived home between 3:30 and 4:00 a.m. on September 24, 1991. Solomon further testified that he had been at C.C.'s residence two to four years before the assault to visit a girlfriend who was living there at the time.[1]

■ Viewing all the evidence in the light most favorable to the verdict, we find any rational trier of fact could have found beyond a reasonable doubt that Solomon committed the sexual assault on C.C. We overrule Solomon's first point of error.

■ In his second point of error, Solomon complains the trial court improperly admitted Officer Carter's testimony regarding R.Y.'s prior identification of Solomon.

As we have previously noted, Carter testified that, on the day of the assault, R.Y. identified Solomon from a photospread prepared by Carter. Carter testified that R.Y. said Solomon looked a lot like the person who rode past R.Y. on a bicycle.

Solomon acknowledges that such testimony is no longer subject to hearsay objections in light of TEX.R.CRIM.EVID. 801(e)(1)(C). Nonetheless, Solomon contends the use of Carter's testimony constituted bolstering and was thus inadmissible under TEX.R.CRIM.EVID. 612(c). Rule 612(c) provides, in pertinent part: "A prior statement of a witness which is consistent with his testimony is inadmissible except as provided in *801(e)(1)(B).*"[2] *Id.* (emphasis supplied).

Solomon asserts that Rule 612(c) provides no exception for testimony proffered under Rule 801(e)(1)(C).

---

1. On May 5, 1992, C.C. testified that she had lived in the house where she was sexually assaulted for three years.

2. Rule 801(e) provides:
 **(e) Statements Which Are Not Hearsay.** A statement is not hearsay if:
 (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him[.]

Solomon also relies upon *Sledge v. State*, 686 S.W.2d 127 (Tex.Crim.App.1984). In *Sledge* the Court of Criminal Appeals stated: " '[b]olstering' occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Id.* at 129. In the recent case of *Cohn v. State*, 849 S.W.2d 817 (Tex.Crim.App.1993), however, the Court of Criminal Appeals refined its definition of bolstering:

> "Bolstering" may perhaps be understood a little more precisely to be any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

*Id.* at 819 (emphasis in original). *See also* TEX.R.CRIM.EVID. 401.

The *Cohn* court further stated: "Rule 612(c) says nothing about the admissibility of substantive evidence that happens to corroborate a witness. Nor do we know of any other provision in the Rules of Criminal Evidence that mandates exclusion of relevant evidence simply because it corroborates testimony of an earlier witness." *Id.* at 820.

We find Carter's testimony was substantive evidence linking Solomon to the charged offense that happened to corroborate R.Y.'s earlier testimony as well. Moreover, we find no indication this evidence was offered for the sole purpose of convincing the jury that R.Y. was worthy of credit. Thus, Carter's testimony was properly admitted under *Cohn*. We overrule Solomon's second point of error.

■ In his remaining point of error, Solomon contends the jury charge was fundamentally defective because it failed to include a definition of reasonable doubt in the application paragraph. In analyzing the trial court's charge, this court must employ a two-step process: we must determine (1) whether error exists in the charge; and, if so, (2) whether sufficient harm was caused by the error to require reversal of the conviction. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

The jury convicted Solomon on the second count in the indictment and in the court's charge. Count two of the court's charge and the paragraph immediately following read:

> If you find from the evidence beyond a reasonable doubt that on or about the 24TH day of September, 1991, in Tarrant County, Texas, the defendant, WOODY SOLOMON, did then and there intentionally or knowingly cause the penetration of the mouth of [C.C.], a child younger than 17 years of age who was not the spouse of said defendant with the sexual organ of said defendant and the defendant by acts or words placed [C.C.] in fear that death or serious bodily injury would be imminently inflicted on [C.C.] and the defendant by acts or words occurring in the presence of [C.C.] threatened to cause the death of or serious bodily injury to [C.C.], then you will find the defendant guilty of the offense of aggravated sexual assault of a child as charged in Count Two of the indictment.
>
> Unless you so find and believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."

The abstract portion of the charge, which followed the application paragraphs, includes the following definition of "reasonable doubt":

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial

consideration of all the evidence in the case.

The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "not guilty."

In *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim.App.1991), the Court of Criminal Appeals adopted a jury instruction on reasonable doubt and required that this instruction be submitted to the jury in all cases tried after the date of the decision. *Id.* at 162, 165. Since Solomon's trial occurred on May 5, 1992, *Geesa* applies to his case.

The reasonable doubt instruction in the instant case is identical to that in *Geesa*. *See id.* at 162. Notably, the *Geesa* opinion does *not* require this instruction to be included in the application paragraph. Indeed, Solomon cites no authority, and we are aware of none, for his argument that "[a]n *application paragraph* which does not properly instruct the jury on the *legal definition* of the standard they are to use in applying the facts to the law denies a defendant a fair trial...." [Emphasis supplied.]

 Under Texas law, a *charge* that fails to apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory, even where the theory of law is abstractly defined in the charge. *Jones v. State*, 815 S.W.2d 667, 670 (Tex. Crim.App.1991). In the instant case, the trial court clearly applied the reasonable doubt concept to the facts of the case and then defined reasonable doubt for the jury. Thus, the charge satisfied the requirements of both *Geesa* and *Jones*.

Because the charge properly defined reasonable doubt and applied the law on reasonable doubt to the facts in this case, we find no error in the charge. We overrule Solomon's third point of error.

The trial court's judgment is affirmed.