Opinion issued September 25, 2008

 











     






In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00172-CR




BRANDON R. ZACHARY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1087329



MEMORANDUM OPINION
          Appellant, Brandon Zachary, appeals from a conviction for the capital murder
of Houston Police Department Officer Reuben Deleon, complainant. Appellant
pleaded not guilty to the jury. The jury found appellant guilty, and the trial court
assessed punishment at life imprisonment, which was the only possible sentence since
the State did not seek the death penalty. See Tex. Pen. Code Ann. § 12.31(a)
(Vernon 2003 & Supp. 2007). In four points of error, appellant contends that (1) the
evidence is legally insufficient; (2) the evidence is factually insufficient; (3) the
prosecutor’s closing argument was improper; and (4) the prosecutor bolstered a
witness’s testimony. We conclude the evidence is legally and factually sufficient to
support the conviction; appellant has not preserved his right to appeal the statements
in the closing argument; and the trial court did not err by overruling appellant’s
objection to the purported bolstering of the witness testimony. We affirm.BackgroundThe management for Woodscape Apartments provided a courtesy apartment
for a few officers of the Houston Police Department. On the evening of October 25,
2005, Starlyn Martinez went to apartment 1015 to change clothes and wait for
complainant to arrive. Martinez was also a Houston police officer and close friends
with complainant. When complainant arrived at around 10:35 p.m., he changed
clothes and left with Martinez. They visited two bars and returned to the officers’
apartment at Woodscape at around 2:15 in the morning.
          Soon after returning to the officers’ apartment, Martinez and complainant heard
a knock at the door. Complainant looked through the door’s peephole. Martinez then
looked through the peephole and saw a black male, whom she later identified as
appellant. Complainant unlocked the door to open it as Martinez walked toward the
back of the apartment. 
          Martinez heard a man speak in a calm voice, followed by complainant’s
response in a calm voice, but Martinez could not hear the content of what was said. 
Martinez heard the door shake, as if someone had pushed it. Before she could turn
around and look, Martinez heard a gunshot. She went to the closet to retrieve a
shotgun that complainant had brought in earlier from his car, pulled the gun off the
shelf, put it on the floor, and began trying to remove it from its zippered case. While
doing this, Martinez heard feet moving around in the front room of the apartment. 
          Martinez heard three to four more shots before finally getting the gun case
open. As she was racking the shotgun, Martinez heard the footsteps of complainant
walking into the bedroom. Complainant looked to see if Martinez had been shot then
fell face down onto the bedroom floor. Martinez questioned complainant to see if he
was okay, but he did not answer. Complainant died from a gunshot wound to his
chest. 
          Shortly before the shooting, Calvin Finnels, a neighbor at the apartment
complex, saw appellant and a companion going to complainant’s building. Then 
Finnels heard four to five gunshots fired, and, after that, saw appellant and the
companion run from complainant’s building. 
          On the night of the shooting, crime scene officers found numerous bullet
strikes inside the apartment. One fired projectile was found in the ceiling just inside
the front door, one in the vent hood in the kitchen, and one in the floor under the
carpet pad. Kim Downs, a Firearms Examiner, testified that the bullets recovered
from the apartment were consistent with a .22 caliber. Officers conceded that
complainant’s bullet wounds were consistent with a struggle over the gun. Officers
acknowledged that no fingerprints found at the scene were determined to be those of
appellant. 
          Martinez later viewed a lineup, and on that occasion, as well as at appellant’s
trial, she identified appellant as the man she saw through the peephole. She also
identified a jacket of appellant’s as similar to the jacket worn by the man she saw
through the peephole. Martinez acknowledged that she never saw appellant inside
the apartment. 
          Officers obtained an arrest warrant for appellant and traveled to Beaumont,
Texas, where appellant turned himself in to authorities. After his arrest, appellant
gave officers a videotaped statement. Appellant told several different stories
explaining that he was near complainant’s apartment on the night of the shooting but
denying that he was near complainant. He did indicate that Antoin Marshal, his co-defendant, had a .22 pistol. 
          Appellant testified at his trial, where he denied that he was in Houston on the
night of the shooting. He contended that he was in Beaumont, where he had been for
about a week after stealing an acquaintance’s car. He asserted that he and Marshal
rode around and smoked that week but never went to Houston. Appellant further
offered that he lied in his video statement by telling officers what they wanted to hear,
making up a lot of details. Appellant suggested that Martinez and Finnels must have
identified him because they had seen him in the apartment complex where he had
lived and sold drugs. He explained that he implicated Marshal because he knew that
Marshal was already in custody and that neither of them had alibis, so he “just
decided to lie on him.” 
 Sufficiency of the Evidence
          In his second and third points of error, appellant contends that the evidence is
legally and factually insufficient to establish the essential elements of capital murder
beyond a reasonable doubt. Appellant asserts the proof fails to show (1) the shooting
was intentional since the evidence shows there was a struggle when the gun was
discharged; (2) appellant was the individual who shot complainant; and (3) appellant,
if he was not the person who shot complainant, “should have anticipated the co-defendant would intentionally murder someone.”
          A. Standards of Review
           In a legal sufficiency review, we consider the entire trial record to determine
whether, viewing the evidence in the light most favorable to the verdict, a rational
jury could have found the accused guilty of all essential elements of the offense
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App.
2005). In conducting our review of the legal sufficiency of the evidence, we do not
reevaluate the weight and credibility of the evidence, but ensure only that the jury
reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App.
1993). 
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. 
           In conducting a factual-sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury’s verdict. See Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We are required by the facual
sufficiency review to afford “due deference” to the jury’s determinations because the
jury is in the best position to evaluate the credibility of witnesses. Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006), cert. denied, 128 S. Ct. 87 (2007). 
          B. Applicable Law
          A person commits capital murder if he intentionally causes the death of an
individual in the course of committing or attempting to commit robbery or burglary.
Tex. Pen. Code Ann. §§ 19.02 (b)(1); 19.03 (a)(2) (Vernon 2005). Proof of intent
is a necessary element of the capital murder charge. Intent can be inferred from the
means used and the wounds inflicted, and is a factual matter to be determined by the
jury from all the facts and circumstances in evidence. See Hemphill v. State, 505
S.W.2d 560 (Tex. Crim. App. 1974).
           Under the law of parties, the jury could have found appellant guilty of capital
murder if they concluded that the murder was committed in an attempt to carry out
a conspiracy to commit robbery or burglary, and, though appellant had no intent to
commit the murder, it was committed in furtherance of the unlawful purpose and
should have been anticipated as a result of the carrying out of the conspiracy. Tex.
Pen. Code Ann. § 7.02(b) (Vernon 2005); Love v. State, 199 S.W.3d 447, 452 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d). “In determining whether the accused
participated as a party, the court may look to events occurring before, during and after
the commission of the offense . . . .” Ransom v. State, 920 S.W.2d 288, 302 (Tex.
Crim. App. 1994). 
          “Evidence that a defendant knew his co-conspirators might use guns in the
course of the robbery can be sufficient to demonstrate that the defendant should have
anticipated the possibility of murder occurring during the course of the robbery.” 
Love, 199 S.W.3d at 453.
          C. Legal Sufficiency of Evidence          Appellant contends that the evidence fails to establish that he or the co-defendant
intentionally caused the death of complainant because the evidence shows that the
shooting occurred during a struggle. Viewing the evidence in a light most favorable to
the verdict, the record shows that a firearm was discharged five times, resulting in two
wounds to complainant, one of which was fatal. See Hemphill, 505 S.W.2d at 562
(finding that intent can be inferred from means used and wounds inflicted). From the
multiple gunshots, a rational jury could have rationally determined that the appellant
had intent to cause the death of complainant. See id.
          Appellant also challenges the evidence that establishes his identity as the
shooter. Viewed in a light most favorable to the verdict, the evidence shows Martinez
recognized appellant as the man who was standing at the door immediately before
complainant let appellant into the apartment and just before complainant was shot.
Also, Finnels identified appellant as the person going into complainant’s apartment
building immediately before the shots were fired and leaving the building soon after
hearing the shots. Furthermore, appellant knew of the caliber of weapon used to kill
complainant and knew the race of complainant when he provided details of the event
to police officers. We conclude these circumstances are sufficient for a rational jury to
determine appellant fired the shots that killed complainant. See Earls v. State, 707
S.W.2d 82, 85 (Tex. Crim. App. 1986) (holding circumstantial evidence sufficient for
jury to infer Earls was the perpetrator when witness could not positively identify him). 
          Appellant alternatively contends that if he was not the person who shot
complainant, no evidence shows that he should have anticipated the co-defendant
would intentionally murder someone. Although we have determined the evidence is
legally sufficient to show appellant was the shooter, even if the jury assumed that
Marshal was the shooter, they could have rationally believed that appellant should have
reasonably anticipated the co-defendant would murder someone. In the videotaped
statement, appellant said that he knew a gun would be used in the course of the
robbery. See Love, 199 S.W.3d at 453. Martinez heard the door shake when the
intruders forcefully entered the apartment. The jury could have rationally determined
the forced entry into the apartment while armed with a firearm reasonably showed the
murder was committed in furtherance of the unlawful purpose and should have been
anticipated as a result of the carrying out of the conspiracy.
          Viewing the evidence in a light most favorable to the verdict, the jury could have
rationally believed appellant intentionally killed complainant during the course of a
robbery or burglary or that appellant was a co-conspirator in the robbery or burglary
and complainant’s murder was committed in furtherance of the unlawful purpose to
commit robbery or burglary and should have been anticipated as a result of the carrying
out of the conspiracy. See id.
          Therefore, we hold the evidence is legally sufficient to prove capital murder. 
See id. We overrule appellant’s second point of error.
          D. Factual Sufficiency of the Evidence
          Appellant challenges the State’s proof to show that he was the shooter by
asserting that the two witnesses who identified him remembered his face from his time
living in the apartment complex and not because he was there when the shooting took
place. Appellant contends that his testimony establishes that he did not commit the
offense due to his testimony that he was in Beaumont at the time of the shooting.
Appellant asserts there is no direct evidence proving he shot complainant since none
of the witnesses saw the appellant with a gun. 
          The record refutes many of appellant’s contentions. The witnesses, Martinez and
Finnels, who each identified appellant, explained that they recognized him from seeing
him the night complainant was shot. Although appellant denied in his trial testimony
that he was present at complainant’s apartment on the night of the shooting, he was
inconsistent in that position, saying in his videotaped statement that he was near the
apartment at the time of the shooting. Concerning appellant’s challenge that no one
identified him as having a gun, we note that in his videotaped statement, he admitted
knowledge of the type and caliber of the gun used to kill complainant.
          Appellant also contends that if the co-defendant was the shooter, there is no
evidence that appellant should have anticipated the co-defendant would intentionally
murder someone because the shooting occurred during a struggle. While the physical
evidence of the bullet strikes within the apartment does suggest there was a struggle
when some of the shots were fired, that does not necessarily mean that all five shots
occurred during a struggle. Martinez heard the first gunshot when complainant was
near the door and then heard three or four more shots. The mere existence of a
reasonable alternative hypothesis does not render the evidence factually insufficient.
See Love, 199 S.W.3d at 454. Moreover, because the evidence shows appellant knew
that either he or his co-defendant possessed a loaded gun while they forcefully entered
complainant’s apartment, appellant should have anticipated a murder occurring in the
course of carrying out the burglary or robbery. See id. at 453. We conclude the
evidence is not so weak that the verdict is clearly wrong and manifestly unjust, and
there is no basis in the record for a conclusion that the great weight and preponderance
of the evidence contradicts the jury’s verdict. See Watson, 204 S.W.3d at 417.
          We hold the evidence is factually sufficient. See id. We overrule appellant’s
third point of error.State’s Closing Arguments
          In his first point of error, appellant challenges the statements made by the State’s
attorney in closing arguments. By failing to object to the closing argument at trial,
appellant has not preserved this complaint for appeal.
          Appellant contends he was denied a fair trial because the prosecution’s improper
argument misstated the law, contradicted the court’s charge, and deprived appellant of
a substantial right. Appellant acknowledges that defense counsel did not object to the
prosecution’s improper argument, and that an objection is normally required to
preserve error for review. See Cockrell v. State, 933 S.W.2d 73, 88 (Tex. Crim. App.
1996) (“We hold a defendant’s failure to object to a jury argument . . . forfeits his right
to complain about the argument on appeal. Any prior cases to the contrary . . . are
expressly overruled.”). 
          Appellant contends that we should reverse even though he has failed to preserve
any error. He cites the Court of Criminal Appeals’ opinion in Marin as support for the
proposition that certain rights are “widely considered so fundamental to the proper
functioning of our adjudicatory process . . . that they cannot be forfeited.” Marin v.
State, 851 S.W.2d 275, 278 (Tex. Crim. App. 1993). The Court in Marin also stated,
however, that “all but the most fundamental rights are thought to be forfeited if not
insisted upon by the party to whom they belong.” Id. at 279. The right to be free from
erroneous jury arguments does not fall into the category of waivable rights and is
subject to procedural default. See id. 
          We hold that by failing to object to the jury argument at trial, appellant has
waived his challenge to the State’s closing argument. See Cockrell, 933 S.W.2d at 88. 
We overrule appellant’s first point of error. Bolstering Witness Testimony
          In his fourth point of error, appellant contends that the trial court erred by
overruling appellant’s objection to bolstering during the testimony of Sergeant Brian
Harris. Over appellant’s objection to “bolstering,” Harris testified that he could go to
prison for aggravated perjury if he lied in his testimony at appellant’s trial, and that he
was not making any lies against appellant. Appellant makes no argument regarding
how the bolstered testimony may have harmed him.
          A. Applicable Law
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).
We will not reverse a trial court’s ruling unless that ruling falls outside the zone of
reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).
Therefore, we address appellant’s evidentiary challenges by determining whether the
trial court’s rulings were outside the zone of reasonable disagreement. See id. An
appellate court must uphold the trial court’s ruling if it is reasonably supported by the
record and is correct under any theory of law applicable to the case. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000).
          Bolstering occurs when one item of evidence is improperly used by a party to
add credence to some earlier unimpeached piece of evidence offered by the same party.
Cohn v. State, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (citing Sledge v. State, 686
S.W.2d 127, 129 (Tex. Crim. App. 1984)). 
          B. Analysis
          Appellant complains that the trial court erred by allowing the State to bolster
Harris’s testimony by allowing rebuttal testimony by Harris. Our sister court of appeals
has held that a general objection to “bolstering” is not sufficient to preserve error
because it does not sufficiently inform the trial court of the nature of the objection. 
See In re J.G., 195 S.W.3d 161, 183 (Tex. App.—San Antonio 2006, no pet.). We need
not decide if a “bolstering” objection preserves error because, assuming error was
preserved by the general “bolstering” objection, the trial court did not err by overruling
appellant’s objection. The testimony about whether the officer would lie at trial and
the consequences for lying was in response to appellant’s testimony suggesting that
Harris might lie to implicate appellant in the offense report. The evidence was in
response to the suggestion that officer Harris was untruthful in his offense report. We
conclude the evidence was not used by the State to add credence to some earlier
unimpeached piece of evidence offered by the State and it was not “bolstering” of the
witness. See Cohn, 849 S.W.2d at 821.
          We hold the trial court did not commit error by admitting the evidence. See id.
We overrule appellant’s fourth point of error.
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Taft, Keyes, and Alcala
 
Do not publish. Tex. R. App. P. 47.2(b).