

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00255-CR

**PATRICK KIRK PITZER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 11-03284-CRF-272**

## MEMORANDUM OPINION

In three issues, appellant, Patrick Kirk Pitzer, challenges his conviction for arson with intent to damage a habitation. *See* TEX. PENAL CODE ANN. § 28.02 (West 2011). Specifically, Pitzer contends that the evidence is insufficient to support his conviction; the trial court erred in overruling his objection to the State's introduction of extraneous acts;

and the trial court erred in overruling his objection to a juror who demonstrated clear

bias against him. Because we overrule all of Pitzer's issues on appeal, we affirm.[1]

## I. PITZER'S CHALLENGE TO JUROR BIAS

In his third issue, Pitzer argues that the trial court erred in denying his challenge

for cause when a juror expressed a strong personal bias against Pitzer's trial counsel.

Pitzer asserts that he was forced to use an additional peremptory strike on this juror

because the trial court erroneously denied his challenge for cause.

## A.    Applicable Law

The trial court's ruling on a challenge for cause is reviewed for abuse of discretion.

*Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005). "We afford the trial court

considerable deference, because it is in the best position to evaluate a prospective juror's

demeanor and responses." *Id.* "This is especially true when this Court is faced with a

vacillating or equivocating venireperson." *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim.

App. 1994); *see Russeau*, 171 S.W.3d at 879. "The trial court is able to consider important

factors such as demeanor and tone of voice that do not come through when reviewing a

cold record." *Banda*, 890 S.W.2d at 54.

The Court of Criminal Appeals has held that a prospective juror may be properly

challenged for cause and removed "if he cannot impartially judge the credibility of a

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Potential jurors "must be open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness." *Ladd*, 3 S.W.3d at 560. The fact that a prospective juror is more or less skeptical of a certain category of witness, however, does not make him subject to challenge for cause. *Id.* (stating that prospective jurors are not challengeable for cause "simply because they would give certain classes of witnesses a slight edge in terms of credibility"); *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (holding that a prospective juror was not challengeable for cause simply because she stated she would be more skeptical of accomplice witnesses than of witnesses generally).

The Court of Criminal Appeals has also stated that:

> A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely. A trial judge must excuse the juror if bias or prejudice would impair the juror's ability to carry out his oath and instructions in accordance with the law. Before the judge excuses the prospective juror, the law must be explained to him and the challenger must show that the potential juror understood the law and still could not overcome his prejudice. To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury.

*Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014) (internal citations & quotations omitted).

**B.      Discussion**

In support of his contention that the trial court erred by failing to grant his challenge for cause, Pitzer directs us to the following exchange with Juror Number 58 during voir dire:

THE COURT:          How are you, Ms. Huffman?

MS. HUFFMAN:      How are you doing?

THE COURT:          You had something you wanted to bring to our attention?

MS. HUFFMAN:      Yes.

THE COURT:          What is it?

MS. HUFFMAN:      Can I speak frankly?

THE COURT:          Yes.

MS. HUFFMAN:      I think I would not be a good juror.

THE COURT:          You think you wouldn't be a good juror?

MS. HUFFMAN:      I don't like the shenanigans of the defense attorney, so I don't want to be in the jury.

THE COURT:          She doesn't like the shenanigans of the defense lawyer. Doesn't want to be on this jury.

MS. HUFFMAN:      I think you were illogical. You tried to make everybody emote a certain way. You were very illogical. What's good for the individual is good for society. And you were trying to also trying to equate the choice in marriage, pulling the plug, freedom. And a little bit of the logical breakdown there. And I don't know. I'm related to ten defense attorneys. I have a

son, brother, and sister an attorney. I don't like all the theatrics, so.

THE COURT: All right. Either side have any questions? Step back outside. We'll make a decision.

At this point, defense counsel challenged Juror Number 58 for cause, arguing that "her personal feelings regarding her ability—her personal feelings regarding my efforts here on behalf of my client could cloud her ability to be fair and impartial." The trial judge then brought Juror Number 58 back into the courtroom and asked her the following questions:

THE COURT: Yes, ma'am, thank you for your candid opinion on that. But I just want to ask you on all the other legal points, are you okay with the law on everything.

MS. HUFFMAN: Of course.

THE COURT: And Mr. Pitzer here is, you know, has a court-appointed lawyer. He had no control over his lawyer. Could you give him a fair trial?

MS. HUFFMAN: Yes.

THE COURT: In spite of who his lawyer is?

MS. HUFFMAN: Yes.

THE COURT: Okay. So you could be fair to the accused in this case; is that correct?

MS. HUFFMAN: Yes, sir.

THE COURT: Be fair to the State in this case; is that correct?

MS. HUFFMAN: Yes, sir, it is.

THE COURT: Step back outside.

[Defense counsel]: Could I ask her a question?

THE COURT: Yes.

[Defense counsel]: You just learned I was court appointed on this. Does that affected your abilities or your evaluation of his presumption of innocence or anything like that?

MS. HUFFMAN: Never.

The trial court subsequently denied defense counsel's challenge for cause as to Juror Number 58. Thereafter, defense counsel requested an additional peremptory strike, asserting that Juror Number 58 should have been removed for cause and that he was forced to take an objectionable juror—Juror Number 12—because he did not have any peremptory strikes left. The trial court denied defense counsel's request for an additional peremptory strike.

Based on our review of the record, we cannot say that the trial court abused its discretion in denying defense counsel's challenge for cause as to Juror Number 58. *See Russeau*, 171 S.W.3d at 879. While Juror Number 58 expressed her dislike of defense counsel's tactics, she acknowledged that she could follow the law and be fair to both Pitzer and the State. *See, e.g., Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991) ("Where a veniremember states that she can set aside her bias, the trial court's refusal to sustain the defendant's challenge for cause will be reviewed in light of all of the answers the veniremember gives. . . . Veniremember Kindell concluded that portion of her voir

dire testimony by stating that she could set aside her personal experiences and abide by the oath of a juror. Given that the trial judge was in the better position to assess the credibility of veniremember Kindell's responses, we conclude that the court did not abuse its discretion in overruling appellant's challenge for cause.").

And to the extent that Juror Number 58's statements expressed bias towards Pitzer, we emphasize that the trial judge is to be given "great deference" because "the trial judge is present to observe the demeanor of the venireperson and to listen to [her] tone of voice." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002); *see Russeau*, 171 S.W.3d at 879; *Banda*, 890 S.W.2d at 54; *see also* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Therefore, because we have concluded that the trial court did not abuse its discretion in denying defense counsel's challenge for cause as to Juror Number 58, and because Pitzer's appellate argument presupposes that the trial court erred in denying this challenge for cause, we cannot say that Pitzer has established harm under *Comeaux*. *See* 445 S.W.3d at 749. We overrule Pitzer's third issue.

## II.   NOTICE OF THE STATE'S INTENT TO INTRODUCE EVIDENCE OF EXTRANEOUS ACTS

In his second issue, Pitzer asserts that the trial court abused its discretion by allowing the State to present evidence of two extraneous acts committed by Pitzer without providing him with proper and timely notice. *See* TEX. R. EVID. 404(b). Specifically, Pitzer complains about testimony provided by Debbie Wedel, Pitzer's sister,

who noted that Pitzer had threatened her on two occasions in response to her calling him an arsonist.

## A.    Applicable Law

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

"Rule 404(b) literally conditions admissibility of other-crimes evidence on the State's compliance with the notice provisions of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). Texas Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

The purpose of Rule 404(b)'s notice requirement is to prevent surprise to the defendant and to apprise him of the evidence the State plans to introduce at trial. *See*

*Hernandez*, 176 S.W.3d at 823-24; *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). The rule requires "reasonable notice." *Hayden*, 66 S.W.3d at 272.

**B.     Discussion**

On appeal, Pitzer complains about an exchange between the prosecutor and Wedel, wherein Wedel testified that she had not told police that Pitzer admitted to setting the fire in this case because Pitzer threatened her. Specifically, Pitzer references the following:

| | |
|---|---|
| Q [The State]: | Okay. Did you ever—but you never went to police? |
| A [Wedel]: | No. |
| Q: | And here we are. We're about three years after the fire. Why now are you coming forward and telling people this? |
| A: | I—I have been threatened. |
| [Defense counsel]: | Objection. Your Honor, may we approach? |
| . . . . | |
| [Defense counsel]: | My objection is to the threat, Judge. We're talking about an extraneous offense that is absolutely—there hasn't been any door opened to it. |
| THE COURT: | Threatened by who? |
| [Defense counsel]: | By Kirk Pitzer. |
| THE COURT: | Man, that's retaliation against a witness, that's evidence of guilt. |

[Defense counsel]:          Going into an extraneous offense that opens the door into all sorts of relationships.

THE COURT:          If the defendant tries to shut down a witness, that's admissible on guilt/innocence. You can show me some law otherwise, I'll look at it.

[Defense counsel]:          I don't have any law otherwise, Judge.

THE COURT:          All right, I'm going to overrule your objection.

After Wedel provided more testimony about Pitzer's threats, defense counsel objected once again on the following ground:

[Defense counsel]:          Judge, I'm going to have one more objection, and it's going to be as to the timeliness of that notice. That notice was provided to me July 25th, 2014. We started trial on the 29th, I believe; is that correct?

. . . .

[Defense counsel]:          We selected a jury on Tuesday, the 29th. And ask the Court to take judicial notice of the standard discovery order in this case. It was entered back in 2011. While it requires the turning over of extraneous offenses, there is not a time limit on it but I would like the Court to rule.

. . . .

[Defense counsel]:          I would like the Court to rule that providing that information on July 25th, starting on July 29th, a matter of—I'll be generous and say five days right there, that that's unreasonable.

Thereafter, the State argued that:

[The State]:    Judge, there's a couple of responses.  First of all, the State has sent over three notices of intent to admit extraneous offenses, one dated July 11th, one dated July 25th.  First one was dated May 13th.

As to the July 25th, there was an amendment of the threats that were made.  We found out about those threats about seven o'clock that night, the previous night.  We immediately provided him notice as to those threats.  I understand that [defense counsel] has objected to timetable.  We gave him notice as quickly as possible.

Under *Hernandez v. State*, which is a case out of the Waco Court of Appeals, three days was held to be insufficient if it's a Friday over the weekend.  In this case we started on Tuesday.  Notice provided as early as possible on Friday.  We actually didn't start trial until Wednesday.  And punishment, which is where we thought this testimony would be coming in, would have been much later in the week.  He's been provided sufficient notice, approximately 5 to 7 days of notice, as to these statements and so—

However, in response to questioning by the trial judge, defense counsel admitted that he knew ten days prior to trial that Pitzer had threatened Wedel.  Then, the trial judge questioned Wedel, who acknowledged that from February 1 to March 1, 2012, she and Pitzer got into an argument, which resulted in Wedel calling Pitzer an arsonist and Pitzer responding that "if you ever called him that again it would be the last time you ever say

anything" and threatening to shoot her if she came out to his property. Ultimately, the trial judge overruled Pitzer's objection and allowed Wedel to testify about these threats.

To preserve error regarding the State's failure to provide reasonable notice of its intent to use extraneous-offense evidence, the defendant must request a continuance to mitigate the effects of surprise. *See Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Martin v. State*, 176 S.W.3d 887, 900 (Tex. App.—Fort Worth 2005, no pet.); *see also Sinclair v. State*, No. 10-11-00424-CR, 2015 Tex. App. LEXIS 2176, at *4 (Tex. App.—Waco Mar. 5, 2015, pet. ref'd) (mem. op., not designated for publication). Pitzer did not request a continuance to allow additional time to investigate the threat allegations or prepare a defense. As such, we cannot say that Pitzer preserved for appellate review his complaint that the State failed to provide reasonable notice of the extraneous offenses. *See Martines*, 371 S.W.3d at 249; *Martin*, 176 S.W.3d at 900; *see also Sinclair*, 2015 Tex. App. LEXIS 2176, at *5.

And even if Pitzer had preserved this complaint for appellate review, we note that the admission of extraneous-offense evidence without proper notice is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b); *see also Hernandez*, 176 S.W.3d at 824. We disregard any error that does not affect Pitzer's substantial rights. TEX. R. APP. P. 44.2(b). As stated earlier, the purposes of the Rule 404(b) notice requirement serves to prevent surprise to the defendant and to apprise him of the offense the State plans to introduce at trial. *See*

*Hernandez*, 176 S.W.3d at 825. Therefore, we consider the purpose of preventing surprise in conducting a Rule 44.2(b) harm analysis. *See id.*

In the instant case, the State provided Pitzer notice of its intent to introduce evidence of the threats at least four days prior to jury selection. Furthermore, defense counsel admitted that he knew ten days prior to trial about Wedel's threat allegations against Pitzer. As such, the record does not demonstrate that Pitzer was surprised by the evidence. Additionally, despite Wedel's delay in reporting the threats, prosecutors noted that they provided Pitzer with notice of their intent to introduce evidence of the threats as soon as they learned about the allegations. Therefore, based on our review of the record, we cannot say that Pitzer was harmed by any error in admitting the extraneous-offense evidence without proper notice. *See* Tex. R. App. P. 44.2(b); *Hernandez*, 176 S.W.3d at 824-25; *see also Sinclair*, 2015 Tex. App. LEXIS 2176, at **5-6; *Pena v. State*, No. 04-13-00358-CR, 2014 Tex. App. LEXIS 11127, at *6 (Tex. App.—San Antonio Oct. 8, 2014, no pet.) (mem. op., not designated for publication) ("If substantively admissible 404(b) evidence is admitted in violation of the rule's notice provision, the trial court's error in admitting the evidence cannot be 'injurious' if the defendant was not surprised by the evidence.").[2] We overrule Pitzer's second issue.

---

[2] In addition, we note that evidence of threats made by Pitzer to Wedel were substantively admissible at trial. *See Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994) ("We have held that criminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing 'consciousness of guilt.'"); *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding that evidence that the defendant threatened to kill the sexual-assault victim's family was admissible to show the reason for a delayed outcry); *Rodriguez v. State*,

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Pitzer alleges that the evidence supporting his conviction is insufficient. More specifically, Pitzer argues the evidence is insufficient to establish his identity as the perpetrator of the arson.

### A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved

---

577 S.W.2d 491, 492-93 (Tex. Crim. App. 1979) (concluding that evidence of threats against a witness is admissible as showing "consciousness of guilt"); *see also Greene v. State*, 928 S.W.2d 119, 123 (Tex. App.— San Antonio 1996, no pet.).

the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

**B.      Discussion**

As noted earlier, Pitzer contends that the evidence is insufficient to establish his identity as the perpetrator of the arson. With respect to arson cases, Texas courts have stated the following:

> A person commits the offense of arson if she starts a fire with intent to destroy or damage a building or habitations within the limits of an incorporated city or town. TEX. PENAL CODE ANN. § 28.02(a)(2)(A). . . . .

"To establish the corpus delicti in arson cases it is necessary to show that a fire occurred and that the fire was designedly set by someone." *Mosher v. State*, 901 S.W.2d 547, 549 (Tex. App.—El Paso 1995, no pet.); *see also Troncosa v. State*, 670 S.W.2d 671, 680 (Tex. App.—San Antonio 1984, no pet.). A jury may infer from any facts that tend to prove its existence, such as acts, words, and conduct of the defendant. *See Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Each fact need not point directly and independently to the guilt of the accused, so long as the logical force of the probative evidence, when coupled with reasonable inferences to be drawn therefrom, is sufficient to support the conviction. *See Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).

*Orr v. State*, 306 S.W.3d 380, 394-95 (Tex. App.—Fort Worth 2010, no pet.). Moreover, this Court has stated that the identity of the criminal actor is an elemental fact in criminal cases and that evidence as to the identity of a criminal may be proven by direct or circumstantial evidence. *Johnson v. State*, 263 S.W.3d 405, 412 (Tex. App.—Waco 2008, pet. ref'd).

At trial, Antonio Oldham testified that he lived across the street from Pitzer and next door to the house that burned down. According to Oldham, the previous tenants of the burnt house were hoarders. Moreover, Oldham recounted that the burnt house had a fly problem and that Pitzer told him the following: "You know what, I'm going to take care of the fly problem for you. Don't worry about it." Later, Pitzer also told Oldham: "You know what, I'll burn the damn house down." Oldham testified that Pitzer stated

on three or four occasions in the three or four days leading up to the incident that he would burn the house down. Oldham also stated that Pitzer told him on the night preceding the fire to not "worry about it. I'm going to take care of it." While the fire was raging, Pitzer allegedly told Oldham to not worry about the fire spreading to Oldham's house because Pitzer was watching it the whole time, and Pitzer also described how he had entered the house through the back window.

Gerald Burnett of the Bryan Fire Department Fire Marshal's Office testified that he located a shoe print under the open window in the dust on the corner bedroom floor that indicated someone other than a firefighter had accessed the house. Burnett also noticed a similar shoe print in the "trailer" inside the house and outside the burnt house.[3] During the execution of a search warrant for Pitzer's house, Burnett found tennis shoes that were confirmed to be Pitzer's inside Pitzer's master-bedroom closet that had the same shoe-tread pattern as those found inside and outside the burnt house. Additionally, Burnett found several gas cans and a modified pesticide sprayer in Pitzer's backyard. The pesticide sprayer, in particular, had "a rag shoved through the cap" that was similar to a wick. The discovery of the gas cans and the modified pesticide sprayer were significant because investigators discovered that gasoline was used in the fire.

---

[3] Burnett explained that a "trailer" is something that would connect or move a fire from room to room. In this case, "there were liquid stains that went from the kitchen area where it was burned, through the dining area, through the living room, through the bedrooms, back around to the breezeway, back around to the kitchen again." In describing the liquid, Burnett recounted that it was not water but rather "greasy or petroleum like." Later, Burnett referred to the "trailer" as the accelerant used to start the fire.

Wedel testified that Pitzer admitted to burning down the house immediately after it happened. After he was released from jail, Pitzer admitted in detail to Wedel how he burned the house and that he had no remorse for what he had done. Later, Wedel noted that Pitzer had threatened her. Specifically, Wedel recounted that when she called Pitzer an arsonist, Pitzer responded that she "had better never say that again that it would be the last time [she] talked." On another occasion, Pitzer threatened to shoot Wedel.

Felix Fernandez, a contractor that was working on remodeling the house at the time of the fire, stated that Pitzer had asked him how much the owner of the house, Brian Stephen, was paying him to fix up the house and then complained that Stephen did not want to pay for a roof on Pitzer's house. And finally, Ruth Torres of the Bryan Police Department testified that she saw Pitzer standing outside watching the house burn—an act she identified as unusual.

Despite the aforementioned evidence, Pitzer attempts to discredit the testimony of Oldham and Wedel by arguing that: (1) Oldham is not credible because he is a four-time felon, because his son had previously started a fire by playing with a lighter inside a closet, and because he was concerned about being a suspect in this case; and (2) Wedel is not credible because she maintained until the eve of trial that Pitzer was innocent. Ultimately, whether Pitzer's arguments cast doubt on the testimony of Oldham and Wedel are credibility and demeanor questions for the jury. *See Chambers*, 805 S.W.2d at 461; *see also Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet.

ref'd) ("The alibi testimony, the lack of physical or forensic evidence, and the differences between the testimony of the witnesses are all factors for the jury to consider in weighing the evidence."). Following *Jackson*, we presume that the jury found the testimony of Oldham and Wedel to be credible and defer to those findings. *See* 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton v. State*, 235 S.W.3d 772, 778-79 (Tex. Crim. App. 2007); *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Johnson*, 176 S.W.3d at 78. Therefore, viewing the evidence in the light most favor to the jury's verdict, we conclude that the evidence is sufficient to establish Pitzer's identity as the perpetrator of the arson. *See* TEX. PENAL CODE ANN. § 28.02; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. We overrule Pitzer's first issue.

## IV.    CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 22, 2015
Do not publish
[CR25]



Page 19